In Equity.

## L. O. ANDERSON *vs.* SAMUEL M. GILE.

Piscataquis.    Opinion November 12, 1910.

*Trusts.   Resulting Trust.   Payment by Cestui Que Trust.   Implied Trust in Land.   Evidence.*

In order for a resulting trust in land to arise when the purchase money is paid by one person out of his own money and the land is conveyed to another, the money may be paid by the cestui que trust himself, by another for him, or for him by the trustee, but it must belong to the cestui que trust in specie, or by its payment by another he must incur an obligation to repay, so that the consideration actually moved from him at the time.

The establishment of a trust in land by implication of law being in defiance of the statute of frauds, and subversive of paper title, the trust must be proved by the most satisfactory and convincing evidence.

In a suit to establish a resulting trust in land purchased by the defendant, evidence *held* not to show any legal liability of plaintiff for the consideration of the deed made by defendant; and hence not sufficient to establish the trust.

In equity.    On appeal by defendant.    Sustained.    Decree reversed.

Bill in equity praying that it be decreed that certain real estate purchased and held by the defendant, was held in trust for the plaintiff and that the defendant be ordered to convey the same to the plaintiff upon payment of the amount due thereon.    An answer and a replication were filed.    Heard before the Justice of the first instance on bill, answer, replication and proof, who filed a decree in favor of the plaintiff.    The defendant duly appealed to the Law Court.

The case is stated in the opinion.

*Hudson & Hudson,* for plaintiff.

*J. S. Williams,* for defendant.

SITTING:   SAVAGE,   PEABODY,   SPEAR,   KING,   BIRD,   JJ.

SPEAR, J.   This is a bill in equity praying the court to declare that a certain transaction between the plaintiff and the defendant in consequence of which the defendant purchased a certain tract of land, operated in establishing a resulting trust in favor of the plaintiff.   The presiding Justice found the law and facts in favor of the plaintiff.   As the case must therefore be analyzed from the standpoint of the plaintiff's evidence, we take the statement of the case verbatim from the plaintiff's brief, which is as follows:

"The plaintiff in his bill alleges that he owned in fee simple certain real estate situate in Monson in the County of Piscataquis; that on the 8th day of May, 1886, this real estate was conveyed in mortgage to the Piscataquis Savings Bank to secure a note in the sum of $422.80; that in said mortgage there were two tracts of land, one known as the Draper farm, the other known as the Seventy-acre lot; that Anderson paid his interest upon said mortgage debt regularly up to about the year 1902, and on the 12th day of December, 1902, the Savings Bank gave notice to foreclose said mortgage; that this notice was printed in the Piscataquis Observer; that the time of redemption upon said mortgage expired on the 18th day of December, 1903; that some time after said notice had been given to foreclose said mortgage the plaintiff learned that fact and went and saw the officers of said bank in regard to said mortgage; that the officers of said bank told said plaintiff that he could have said real estate and would make arrangement with him in regard to the same; that said Anderson in the fall and winter of 1905-6 was at work for said Gile in cutting, yarding and hauling logs and other kinds of lumber; that in the spring of 1906 said Gile was where said Anderson was at work and Anderson told Gile in regard to the mortgage which he had given to the Savings Bank on the land in Monson, being the old farm where he formerly lived, and he asked him if.he would not buy from the bank said real estate and pay for it for him, and that if he would buy it from the bank, and pay for it he would pay Gile what he had to pay the bank for said real estate; and that soon after said Gile and said Anderson

went over the land and said Gile agreed with said Anderson that he would buy said real estate from said bank for him, and could have said land for such price as said Gile paid said bank for said land."

But two questions arise in this case: (1) Whether under the laws of this State a resulting trust can be created with respect to lands, and (2) Whether the facts in this case are sufficient to establish a resulting trust as claimed by the plaintiff. The first question has been definitely settled in *Herlihy* v. *Coney*, 99 Maine, 469. In the opinion of the court in this case is fully stated the grounds upon which a resulting trust may arise by implication of law as follows:

"A resulting trust arises by implication of law when the purchase money is paid by one person out of his own money, and the land is conveyed to another. *Baker* v. *Vining*, 30 Maine, 121; *Stevens* v. *Stevens*, 70 Maine, 92. It may be paid by the cestui que trust himself. It may be paid by another for him. It may be paid for him by the trustee. *Page* v. *Page*, 8 N. H. 187; *Boyd* v. *McLean*, 1 Johns. Ch. 582; *Kendall* v. *Mann*, 11 Allen, 15. But the money must belong to the cestui que trust in specie, or by its payment by the hands of another he must incur an obligation to repay, so that the consideration actually moves from him at the time. He may take money from his purse, or he may borrow it, and he may borrow it from the trustee. And if the lender pays the money borrowed for the borrower, the borrower pays it. The test is whose money pays the consideration for the purchase. The trust arises from the circumstance that the money of the real purchaser and not that of the grantee of the deed formed the consideration of the purchase. The plaintiff says the money was a loan to him. If by force of the loan the borrower became bound by law to repay, then a resulting trust arose, even if the money did not pass through the plaintiff's hands. And from the use of the term "loan" in its ordinary signification, the law implies a promise to repay. And if the cestui que trust is bound to repay, it matters not whether it is by implied or by express promise."

It is evident from this quotation that the evidence must establish the fact that the money with which the land is purchased belonged to

the cestui que trust. It is also apparent that the test of ownership of the money advanced is the legal liability of the cestui que trust to repay it. It is not contended in this case that the plaintiff advanced any money for the purchase of the land in question. The only issue then is, are the facts, considered in the most favorable light for the plaintiff, sufficient to warrant the conclusion that the defendant loaned to the plaintiff the money advanced for the purchase of the land.

As a legal proposition we think it will not be denied by the plaintiff that the attempt to establish a trust in lands by implication of law is in defiance of the statute of frauds, subversive of paper title and must be proven by the most satisfactory and convincing evidence. In *Baker* v. *Vining*, 30 Maine, 124, the court intimate that were the question a new one the establishment of a resulting trust in lands in favor of the one who advanced the purchase money might be denied. The opinion further says quoting Chancellor Kent: "The cases uniformly show that the courts have been deeply impressed with the danger of this kind of proof as tending to perjury and insecurity of paper title, and they have required the payment by the cestui que trust to be clearly proved." Then speaking for our own court the opinion further says: "This court have manifested a regret that long practice had established the doctrine, and have felt the necessity of requiring full and convincing proof of payment, as the basis of a resulting trust, in favor of one making it against the person having the legal title." In *Buck* v. *Fife*, 11 Maine, page 9, our court seemed to have passed for the first time upon this question and with reluctance adopted the doctrine laid down in *Boyd* v. *McLean* by Chancellor Kent saying that "although he admits that such evidence may be dangerous in its consequences, he felt himself constrained to come to the conclusion that such proof was admissible in courts of equity. The Chancellor examined the cases with his usual ability, and without going over the same ground, which we cannot regard as necessary, we find ourselves compelled by the weight of authority to adopt the same opinion, however distrustful of its policy." In *Dudley* v. *Bachelder*, 53 Maine, 403, it is said: "Courts are stringent in the requirement of unquestion-

able evidence to establish implied or resulting trusts." See also *Burleigh* v. *White*, 64 Maine, 23, in which the court reiterates its adherence to the rigid rule of proof required in this class of cases, saying : "Nor are we inclined to relax in any degree the rule adverted to in most cases, that in order to establish a resulting trust by parol evidence, the proof must be full, clear and convincing. Obviously a claim so inconsistent with the tenor and ordinary effect of deeds conveying real estate ought not to be allowed except upon proof sufficient to satisfy a reasonable mind of its validity." 3 Pomroy, page 1999, sec. 1040, (third edition), summarizes the question of proof in this class of cases as follows : "It is settled by complete unanimity of decision that such evidence must be clear, strong, unequivocal, unmistakable, and must establish the fact of a payment by the alleged beneficiary beyond a doubt."

In view of these rigid rules of evidence in proving the existence of a trust by implication of law, is the plaintiff's evidence, regardless of the opposing evidence of the defendant, sufficient to establish, at the time the plaintiff alleges the defendant agreed to purchase the land in question for him, a loan from the defendant which could be legally enforced? We are compelled to the conclusion that this evidence does not quite meet the high degree of proof required. In the first place the circumstances surrounding the transaction have no particular probative force in favor of the plaintiff's contention or in support of his testimony. It is evident that the plaintiff made no effort to redeem this property from foreclosure and none for two or more years afterwards to raise the amount due the bank for which the bank was willing at any time to transfer it to him. It also appears that the first conversation with reference to the purchase of this property by the defendant arose by way of a casual talk in regard to the matter.

Nor does the testimony itself relating to the question of a loan of the money by the defendant to the plaintiff, all of which will appear in the following quotation, in the opinion of the court, furnish the proof required to establish a loan. The testimony introduced upon this point was as follows : Q. Now when you were at work there for Mr. Gile, did you say anything to him about the old farm ? A.

Yes, sir, I told him to go and buy it for me, and he went down afterwards. Q. What did he say, did you see him afterwards? A. He was gone, and he went to the bank and buy that farm, buy it for me. I tell him to buy it for me. Q. You asked him to buy it for you? A. Yes, sir. Q. What did he say? A. He said he should do it, he should go and see and try to get it for me. Q. He said he would go and try and get it for you? A. Yes, sir. Q. After he told you that did he see you again? A. He saw me after he bought it again, and tell me "I bought that farm now." Q. What did he tell you then? A. Well, He tell me I cannot have it. Q. After he got the deed he told you you could not have it? A. Yes, sir. Q. Now at the time you asked him to buy it for you, did you know about the 70 acres being in? A. No, I did not know anything about that at all; I forgot all about it. Q. At that time? A. Yes, at that time. Q. At the time you asked him to buy it for you, did you tell him you would pay him for it what he paid? A. Yes, sir. Q. At that time did he say to you he would go to the bank and get it? A. Yes, he went to the bank to get it and pay for it there. Gile he came back, and he say he keep it himself. On cross-examination the testimony upon this point is as follows: Q. Did you ever give Mr. Gile any note? A. No. Q. Did you ever give him any security for this money that you said he paid for the place? A. No, I never gave him no money. Q. Did you ever become liable to him in any way for the amount he paid to the bank for that place? Mr. Hudson. "I object to that in that form." The Court: "That is a question of law, I exclude it. There is no claim in the bill of any note or any writing, so you need not disprove what they have not alleged." Henry Hudson testified that in conversation with Mr. Gile he did not deny that he purchased the farm for the plaintiff. Albert W. Chapin said that Gile said that Anderson got him to take up the mortgage from the Savings Bank. This is all the direct evidence we are able to find in this case on the part of the plaintiff, tending to establish a loan from the defendant to the plaintiff. It will undoubtedly be conceded that in order to establish a loan it is incumbent upon the plaintiff to prove a contract, that is, an agree-

ment between the plaintiff and the defendant whereby the plaintiff understood that he was receiving a loan of money from the defendant and whereby the defendant understood, or ought to have understood, that he was making a loan to the plaintiff. Upon the plaintiff's own evidence we are unable to find that the defendant understood, or ought to have understood, that he was making a loan. He received no note; he received no writing; he received no security; he paid no money to the plaintiff; he received no promise from the plaintiff to pay for money advanced to him; the plaintiff was not present when the money was paid over; it was the defendant's own money and never went into the hands of the plaintiff; no time was fixed for payment. The plaintiff's only reference to the payment for the money advanced by the defendant for the farm is found in a categorical answer to the following leading question : Q. At the time you asked him to buy it for you, did you tell him you would pay him for it what he paid? A. Yes, sir. This question was put by the plaintiff's attorney and contains the gist of this whole transaction, from the standpoint of the plaintiff's contention in the case at the time of the trial, although perhaps not from the standpoint of his contention in his argument before the court. At that time the case seems to have proceeded upon the ground of a contract on the part of the defendant to purchase the place for the plaintiff, allowing the plaintiff at some future time to pay the defendant the amount advanced. But such a contract as this cannot be made the basis of a trust in land by implication of law. The money advanced to create such a trust must have belonged to this plaintiff at the time it was advanced. Therefore, the plaintiff's argument seems to be based upon a theory different from that upon which the case was tried. As this question and answer constitute the only reference to payment to the defendant, they become very important in determining the real transaction. Let us then analyze the question, as the answer is simply a categorical affirmative. The question contains this language : "At the time you asked him to *buy it* for you." *It* refers to the farm. This language given its plain and ordinary meaning would convey to the mind of the ordinary reasonable person the impression that the defend-

ant was asked to buy the farm for the plaintiff. The question then proceeds: "Did you tell him you would pay him *for it* what he paid?" Again the ordinary meaning of this language can convey to the reasonable mind only one impression and that is, that the plaintiff would pay the defendant "for it," the farm, what he paid. In this question and answer we are unable to discover a single element of loan, or hiring money, or an agreement to let money, or a promise to pay money. This question and answer then, if given full weight, instead of showing an implied promise to pay a loan, is rather evidence of an express promise to pay for the farm, at some time, what the defendant had paid for it.

That the defendant, in this loose manner, without note, writing, promise to pay in specie, or time of payment fixed, understood that he was making a loan, cannot, under the strict rule of proof required in this class of cases, be fairly inferred from the evidence. A contract to purchase the place for the defendant would seem more nearly to fill the intent of the transaction. By an allusion to the statement of the case it will be seen that the plaintiff's own version of the transaction herein involved is in perfect harmony with the analysis of the above question and answer. The last sentence of the statement is as follows: "And that soon after said Gile and said Anderson went over the land and said Gile agreed with said Anderson that he would buy said real estate from said bank *for him* and he could have said land for such price as said Gile paid said bank for said land." This states an entirely different ground from that upon which the plaintiff seeks to recover and one which we believe no court has ever found to be sufficient proof for the basis of a resulting trust.

Now adverting to the test, that legal liability of the cestui que trust for the consideration of the deed determines the character of the conveyance, what can be found in the plaintiff's evidence which tends to establish his legal liability for the money advanced by the defendant for the land in question? He gave no note, he gave no writing, he furnished no security, he made no promises to repay. He simply said he would pay for the farm what the defendant paid for it, which, in the common and ordinary meaning of the language,

would be a verbal agreement to buy the farm of the defendant and pay him a certain price. If this agreement had been put in writing it might suggest, at least, a trust within the statute. In view of this evidence, suppose the farm had depreciated so that it was actually worth much less than the amount paid for it, and that the defendant, at the time this bill was brought, had instituted an action at law against the plaintiff for the recovery of the money invested in the farm, can there be found, even in the plaintiff's testimony, a contract or promise upon which such action could be sustained? We are unable to discover it. It therefore follows that the test which it is incumbent upon the plaintiff to prove in order to sustain his bill, has failed.

But of course the case does not stop with the plaintiff's evidence. The defendant specifically denies that he ever at any time told Mr. Anderson that he would buy the property for him or that he would loan money to him to buy it. The defendant further said in response to questions that he never had any evidence of indebtedness or anything, by which he could recover of Mr. Anderson if he did not take the farm. It seems to us it would be crossing the border line to declare, upon the evidence in this case, that the doctrine of the statute of frauds can be avoided and the force of a deed effaced. If so, if one should stand by and see his neighbor buy a piece of real estate, which in a year or two had rapidly advanced in value, and conclude that he would like to have the benefit of such purchase, it would only be necessary for him to say that the purchaser agreed to buy the property for him upon his promise to pay, at some future date, the original purchase price. It is the opinion of the court that specific proof of the facts upon which to base a trust by implication of law, is wanting in this case.

*Appeal sustained.   Decree reversed.*
*Bill dismissed with costs.*