(No. 4959.   December 13, 1928.)

THE NATIONAL BANK OF IDAHO, a Corporation, Plaintiff and Appellant, and W. E. BILLS, Plaintiff, v. D. W. STANDROD & COMPANY, a Corporation, E. W. PORTER, Commissioner of Finance, and K. L. SCOTT, His Deputy, Defendants and Respondents, and THE STANDARD SECURITIES COMPANY, a Corporation, Intervenor and Respondent.

[272 Pac. 700.]

94

Jones, Pomeroy & Jones and Whitcomb & Cowen, for Appellant.

John W. Jones and Guy Stevens for Respondent.

Merrill and Merrill, for Intervenor-respondent.

GIVENS, J.—R. G. Bills, doing business as the Bills Auto Company, contracted to purchase a garage in Shelley from William H. Montgomery and Roy R. Cooper, to be paid for in monthly instalments of $250.00. The interest of Cooper was shortly thereafter transferred to Montgomery. Soon after making this agreement Bills died, but the business was continued by his estate with W. E. Bills acting as manager.

The Bills Auto Company had borrowed large sums of money from D. W. Standrod & Company for which it had given short term notes. As these fell due, they were renewed by W. E. Bills, signing as "Bills Auto Company, by W. E. Bills, Mgr." These notes were assigned as collateral to the United States National Bank of Portland, to the National Bank of Idaho, the plaintiff in this action, and to the Standard Securities Company, the intervenor.

The National Bank of Idaho holds by assignment or claims title to six of these notes.

The Standard Securities Company holds ten of the notes signed by W. E. Bills as manager of the Bills Auto Company and one note for $5,827.10 signed by W. E. Bills, individually. All of these notes except the last named were dated prior to June 1, 1922, and most of them were renewals of notes given by R. G. Bills before his death.

In addition to the notes enumerated above, the National Bank of Idaho holds two notes for $9,457.37, signed by W. E. Bills, personally, with characteristics that distinguish them sharply from the other notes. To understand the significance of these notes, it will be necessary to explain some of the circumstances that led to their execution.

The Shelley contract entered into by R. G. Bills provided for forfeiture if payments were not made promptly. In June, 1922, payments were in arrears and Montgomery served notice of forfeiture. Prior to this time, W. E. Bills and the officials of the Standrod Bank on the one hand, and Montgomery and officials of the Bank on the other, had had some conversations relative to this property, as a result of which, on June 17th, Montgomery deeded the property to W. F. Berryman, the cashier of the Standrod Bank, for $9,457.37, the amount remaining unpaid on the contract. Six days later, W. E. Bills gave to the Bank the two notes mentioned above, now held by the National Bank of Idaho, for $9,457.37, the exact amount of the purchase price of the property.

Several months later and prior to the closing of the Standrod Bank, Bills demanded the return of his notes, and it was agreed that they would be returned. This was not done inasmuch as they had been assigned to other banks as collateral. At this same time Berryman deeded the property in question to the Standrod Bank.

Shortly thereafter the Standrod Bank closed its doors and its assets were placed in the hands of the Commissioner of Finance. Plaintiffs brought this action and sought to have a trust imposed on the Bills property. The intervenor based

its complaint on the theory that the deed from Montgomery to Berryman and then from Berryman to the Standrod Bank was in fact an equitable mortgage for the benefit of all of the holders of the Bills notes.

The trial court found that the plaintiff, W. E. Bills, had no interest whatever in the Montgomery property; that the transaction between Montgomery and Berryman and Berryman and the Bank constituted a purchase of the property by the Standrod Bank, made with its own funds, Berryman merely holding as trustee; that the deed was not given as security for the notes and that it was not intended by the parties to be a mortgage. The court further found that the Standard Securities Company, the intervenor, was a holder of a note for $5,827.10, given by W. E. Bills, personally, and awarded judgment thereon. On all other issue the court found for the defendants.

The intervenors have not appealed, and the plaintiff, the National Bank of Idaho, in appealing makes no contention that the deed of the Bills property from Montgomery to Berryman for the Standrod Bank was an equitable mortgage for the security of all the note-holders. We may therefore disregard this angle of the case. The principal contention of appellant in this court seems to be that when, in June, 1922, the Bills' property was deeded to Berryman as cashier of the Bank, a resulting trust arose in favor of W. E. Bills. It is maintained that this was the legal effect of the conveyance to Berryman, followed by the execution of the two notes by Bills for the exact amount of the purchase price of the property. These notes, as indicated above, are now the property of the National Bank of Idaho. The other six notes held by this Bank may be henceforth ignored inasmuch as their only relevancy would be in connection with an equitable mortgage, and it is no longer urged, nor, in our opinion, does it appear, that such was the intention and effect of the deed.

The question here to be determined is the legal effect of the transaction of June, 1922. There is little, if any, conflict in the evidence.

Mr. Bills testified that he had an understanding with Berryman, the cashier, that he would sign two notes to enable the Standrod Bank to get possession of the Bills' property, thereby permitting the Bank to realize enough either from the income from the property or from a resale to recoup some of its losses on the line of Bills' notes which it had discounted and on which it was liable as an indorser. He further testified that Mr. Berryman assured him that when the Bank had been fully paid on its notes, the property would be turned over to him. It is undisputed that it was the distinct understanding of both parties that Bills was not to be liable on the two notes which he gave to the Bank at this time. It appears that they were given solely for the convenience of the Bank in a matter of bookkeeping.

Mr. Berryman testified that he had taken notes from Bills covering the purchase price of the Bills' property ''for the purpose of taking care of the funds for the purchase''; that the understanding was that he (Berryman) would take the property as the trustee for the benefit of the Bank, and that after the Bank was paid, it would be deeded to Bills; that on June 19, the deed was delivered to him and the purchase price paid to Montgomery in funds of the Bank; that on June 23, Bills executed to the Standrod Bank two notes aggregating the exact amount paid for the land.

Mr. Montgomery testified that he had conveyed the Bills property to Berryman for the Standrod Bank; that all of the negotiations leading up to the purchase were had between Berryman and himself (Montgomery), and that Bills took no part in the transaction as far as he knew.

The above constitutes substantially all the evidence relating to the transaction of June, 1922, by which the Bills' property passed from Montgomery to Berryman, the latter presumably acting for the Standrod Bank. Summarizing, it appears:

1. That Bills and Berryman had entered into an agreement by which Berryman was to hold the Bills property for the Standrod Bank until the latter was repaid, after which

...

it was to be deeded to Bills. This agreement was not in writing.

2. That money for the purchase price was furnished entirely by the Standrod Bank.

3. That the notes given by Bills to the Bank covering the · purchase price were not executed until six days after the purchase, and were given with the distinct understanding that Bills would not be held liable thereon.

On these facts plaintiffs base their allegations of a resulting trust. A resulting trust can never rest on an express agreement (*Monson v. Hutchin*, 194 Ill. 431, 62 N. E. 788; Perry on Trusts and Trustees, 6th ed., sec. 134; see, also, 39 Cyc. 104); and any understanding that may have been had by the parties is competent only as throwing light on the intention of the parties with relation to their acts which give rise to the trust. (*Ward v. Ward*, 59 Conn. 188, 196 Atl. 149.) This intention must not be related directly to the creation of the trust for in that case there would be an express trust.

One of the commonest forms of the resulting trust is the purchase-money trust. That is, where title to property is taken in the name of one party but the consideration is paid by another, a trust results in favor of the party who pays the price. Discussing the implications of this type of trust, Pomeroy says:

"In order that this effect may be produced, however, it is absolutely indispensable that the payment should be actually made by the beneficiary, B, or that an absolute obligation to pay should be incurred by him, *as a part of the original transaction of purchase,* at or before the time of the conveyance; no subsequent or *entirely independent* conduct, intervention or payment on his part would raise any resulting trust." Pomeroy on Equity Jurisprudence, 4th ed., sec. 1037.

This quotation clearly indicates that the beneficiary claiming the protection of the trust must have advanced the consideration for the conveyance, or that an absolute obligation to pay it should have been incurred by him. The evidence

in this case is clear that the purchase price was advanced, not by Bills but from the funds of the Bank. Nor can it be said that this advance was a loan to Bills for it does not appear that Bills was under any obligation to repay it. It is true that several days after the property had been conveyed to Berryman, Bills executed notes in the amount of the purchase price to the Bank. But the cases are emphatic in holding that the purchase money must have been advanced at or before the conveyance, or at least, before that time, an absolute obligation incurred to pay it. (*Pittock v. Pittock,* 15 Ida. 426, 98 Pac. 719; *Lincoln v. Chamberlain,* 61 Cal. App. 399, 214 Pac. 1013; *Furber v. Page,* 143 Ill. 622, 32 N. E. 444; *Norton v. Brink,* 75 Neb. 566, 121 Am. St. 822, 106 N. W. 668, 110 N. W. 669, 7 L. R. A., N. S., 945.)

If it should be urged that the execution of the notes relates back to the date of the conveyance, the answer is that the notes, as between the parties, did not place Bills under an absolute obligation to pay them. The evidence is indisputable that he executed the notes with the distinct understanding that he was not to be held liable for their payment. The evidence of payment or obligation to pay must be clear and convincing before a resulting trust will be declared (*Anderson v. Gile,* 107 Me. 325, 78 Atl. 370; *Bell v. Edwards,* 78 S. C. 490, 59 S. E. 535) and the evidence herein discloses neither payment nor obligation to pay.

There is another reason why a resulting trust cannot be declared under the facts of this case. A resulting trust is based on a presumed intention of the parties. But where there is direct evidence of an express agreement quite different in its effect from that implied by the law from the acts of the parties, the presumption of a resulting trust will not be indulged. (*Bell v. Edwards, supra;* Perry on Trusts and Trustees, *supra,* sec. 139.) In the present case, there is evidence of an oral agreement between Bills and Berryman whereby the latter was to hold the Shelley property as trustee for the Standrod Bank until the Bank was repaid, after which it was to be deeded to Bills. The resulting

trust which appellant urges is a simple purchase-money trust with Berryman holding the legal title for Bills, the beneficiary. The intention indicated by the express agreement and the intention which the law is willing to imply from the parties' conduct being in conflict, a resulting trust cannot be declared.

An express trust was not pleaded, nor, if it had been, (although it is not necessary to decide this point) do we think it could have been enforced in view of the statute of frauds.

Some contention is made that at a later date, as the result of an agreement between Bills and the directors of the Standrod Bank, a constructive trust arose in favor of Bills in connection with this same property. The evidence of this agreement is very indefinite but the plaintiffs attempted to prove that Bills agreed to surrender what interest he had in the property, which was then to be deeded to the Bank by Berryman, in return for the cancelation of the notes which the Bank held against him. But the only interest which Bills could have had in the property was predicated on the existence of a resulting trust. As we have seen, no such trust arose, and therefore Bills had no interest in the property to release. Any subsequent agreement, such as plaintiff attempted to prove, was without consideration.

The judgment is affirmed. Costs awarded to respondents.

Wm. E. Lee, C. J., Taylor, J., and Hartson, D. J., concur.

Budge, J., dissents.