SMITH, Respondent, vs. FRENG, Administrator, Appellant.

*May 2—June 5, 1923.*
*December 15, 1923—January 15, 1924.*

*Executors and administrators: Claims against decedents: Compensation for personal services: Reasonable value of service: Agreement to pay fixed sum: Evidence: Sufficiency: Limitation of actions.*

1. Evidence in support of a claim for personal services rendered a decedent which showed that deceased in her last sickness signed a note in blank and instructed a witness to take it to her banker to have him fill it out in plaintiff's favor for $3,000, and that the banker had refused to do so, does not support a finding that the plaintiff and deceased had entered into an agreement that deceased would give her $3,000 for services rendered and to be rendered, as the note was never delivered and was but an intention to do something which was never effectuated.  p. 353.

2. Nor does the evidence, which failed to show that conversations of certain witnesses with decedent, in which decedent expressed a desire that plaintiff have something for her work, took place in the presence of the plaintiff, or that she had ever agreed to serve decedent for any specific time for any specified sum, sustain such a finding.  p. 353.

3. The evidence as a whole, however, is *held* to show that the decedent intended that the plaintiff should be paid for her services at or after the death of decedent, that such understanding came to the knowledge of the plaintiff and was acquiesced in by her, and that plaintiff and decedent reached an agreement that the services were not gratuitous but were to be paid for at death. [After reargument on the point as to whether there was sufficient evidence to show such an agreement, the court adheres to and affirms the judgment on the original hearing.] p. 353.
4. In such a case an action for the reasonable value of the services rendered will lie at any time within six years after the death of the decedent, even though claimant began to render services many years prior thereto. p. 354.
5. Evidence as to plaintiff having rendered valuable personal services to decedent being undisputed, the finding of the jury as to the reasonable value thereof cannot be disturbed on appeal on the ground that such value was too high. p. 354.

ESCHWEILER and ROSENBERRY, JJ., dissent.

APPEAL from a judgment of the county court of Trempealeau county: E. F. HENSEL, Judge. *Modified and affirmed.*

Plaintiff filed a claim in the county court against the estate of Syverina Huskelhus, deceased. It appears that plaintiff was born January 6, 1891, and that in March, 1902, she went to live with the deceased and remained there continuously until July, 1910, when she left. After July, 1910, she returned to live with the decedent at five different times, but was not living with her at the time of her death, which occurred on March 23, 1921. The claim for services was founded upon two alleged contracts, the nature of which will appear in the special verdict hereinafter set out, and also upon *quantum meruit.*

The jury found (1) that the plaintiff and the decedent did not enter into an agreement whereby the decedent agreed to compensate the plaintiff, in consideration of her leaving her home and becoming a member of the family of the decedent and performing labor and services for the decedent, in a sum equal to the value of the share received by any of her lawful heirs; (2) on or about the month of

March, 1902, the deceased took the plaintiff into her family as a member thereof; (3) the plaintiff and the deceased did in the month of March, 1902, or at some time thereafter, enter into an agreement by the terms of which the decedent agreed to compensate the plaintiff by giving her $3,000 for services rendered and performed in the home of decedent from March, 1902, until July, 1910, and for services rendered and aid and assistance given or to be given and furnished the decedent from time to time until her death; (4) plaintiff did not abandon such contract in July, 1910; (5) plaintiff sustained damages in the sum of $3,000 by reason of the failure of the decedent to compensate plaintiff according to the contract set out in the third finding; (6) the reasonable value of the services performed and the aid and assistance given by the plaintiff to the deceased from July, 1910, until her death was the sum of $1,040; and (7) the reasonable value of the services performed and the aid and assistance given by plaintiff to the deceased from March, 1902, to July, 1910, was $860.

Upon such a verdict the court awarded judgment to the plaintiff in the sum of $3,000, being the amount which the jury found the deceased by contract with the plaintiff had agreed to pay her. From such judgment the defendant appealed.

For the appellant there was a brief by *J. Reese Jones* of Osseo, attorney, and *W. H. Frawley* of Eau Claire, of counsel, and *Linderman & Ramsdell* of Eau Claire, attorneys for *John Huskelhus* and other heirs; and the cause was argued orally by *Mr. Frawley, Mr. Jones,* and *Mr. G. O. Linderman.*

*E. S. Jedney* of Black River Falls and *Ole J. Eggum* of Whitehall, for the respondent.

The following opinion was filed June 5, 1923:

VINJE, C. J.    We shall not enter into a discussion of all the questions raised and argued upon the appeal because in

our view many of them become immaterial because of the conclusion we have reached that the evidence does not sustain the finding that a contract for any specific sum as compensation for services was ever entered into by the plaintiff and decedent.  As evidence tending to sustain the verdict of the jury in finding that a contract for $3,000 had been entered into, the plaintiff relies upon the testimony of several witnesses.  These witnesses were Hans Peterson, Matt Monson, Dr. Olson, Mrs. Ludwig, and Mrs. Peter Dahl.  We shall set out only the substance of such testimony.  Hans Peterson testified that he had several talks with the deceased after plaintiff went away, in which the deceased said she wanted the plaintiff to have something for her work.  The last statement was at the hospital at Eau Claire about a week before the deceased died.  In none of the statements made to the witness did she ever mention any amount which she wanted her paid.  Matt Monson testified that he had a number of conversations with the decedent from 1912 to the time of her death, in which she said she wanted plaintiff to have something after her death.  Shortly before she died she signed a blank note, put down in pencil upon an envelope the figures 3;000, and told Monson that she wanted him to give the note to her banker, have him fill it out and insert in it the sum indicated upon the envelope, saying to him that she wanted plaintiff to have that amount for her services.  Monson took the note to the banker, but he declined to fill it out and deliver it because he thought it was not good business to do so knowing that the decedent was sick at the hospital, and he did not care to take the responsibility of filling out and delivering a note without personal direction.  Dr. Olson testified that the deceased told him she intended that the girl, meaning the plaintiff, should be well paid for her work, at one time stating, "When I get through I intend the girl shall be well paid."  Mrs. Ludwig and Mrs. Dahl testified to the effect that the deceased told them she wanted the plaintiff to be well paid for her services.

This is the substance of the oral testimony tending to support the contract that the decedent agreed to pay plaintiff $3,000 for her services. In addition to this there are some statements in letters written by the decedent to the plaintiff which it is claimed have a bearing upon the making of this contract. In a letter dated February 24, 1921, the decedent wrote plaintiff, "If I do not live, then shall you have some thousand dollars if it is not ruined for me." In a letter dated February 17th she wrote, among other things: "*A. N. Freng* has been here many times lately, but I got a little better, then I told *A. N. Freng* that you should share equally with them, for you know that you have done more for me than any of my own, and it is the same now also, except for big pay." *A. N. Freng* was an heir of the decedent. It is quite probable that the jury relied upon the testimony of Matt Monson, wherein it appears that the decedent desired to give the plaintiff a note for $3,000 in payment of her services in finding that a contract was made. Such evidence could not support the finding because it appears that the note was never delivered. It was but an intention to do something which was never effectuated.

We are unable to find any evidence in the case which sustains the finding that a contract for a specific amount was ever entered into between plaintiff and the deceased. The substance of the evidence above set out as well as all other evidence in the case fails to show that any of these conversations took place in the presence of plaintiff, or that she at any time agreed to serve the decedent for any specific length of time for any specific sum of money. We therefore hold that the finding of the jury referred to must be set aside. But the above evidence as well as other evidence shows clearly that the decedent intended that plaintiff should be paid for her services at or after the death of the decedent. That such understanding came to the knowledge of the plaintiff and was acquiesced in by her is evident from the extracts contained in the letters above quoted. So we have

a case, not where a specific amount is agreed to be paid at death for services rendered, but a case where an agreement is reached by the decedent and the claimant that the services which the claimant rendered are not gratuitous but are to be paid for at death. In such a case the statute of limitations does not begin to run until the death of the promisor. Hence an action for the reasonable value of such services will lie at any time within six years after the death of the decedent, even though claimant began to render services many years prior to such death. *Estate of Kessler,* 87 Wis. 660, 59 N. W. 129; *Taylor v. Thieman,* 132 Wis. 38, 111 N. W. 229; *Laughnan v. Estate of Laughnan,* 165 Wis. 348, 162 N. W. 169.

It is not disputed that the plaintiff rendered valuable services for the decedent, and though it is urged by the defendant that the finding of the jury as to the reasonable value thereof is too high, we cannot disturb the findings on that ground. It is probable that had the decedent been in circumstances where she could, without selling a portion of her property, as she states in some of her letters, have paid the plaintiff in cash, she would herself have made the payment at least equal to if not greater than that found by the jury. That is almost conclusively evidenced by the testimony of Monson, who says she desired to give her the sum of $3,000 and signed a note with the request that it be filled out for that amount.

Some errors are alleged to have occurred in the admission and rejection of evidence as well as prejudicial statements claimed to have been made by counsel for the plaintiff in his argument to the jury. Were it a case in which the evidence was in sharp conflict and preponderating but little in favor of either party, we might well reach the conclusion that some of the statements made in argument to the jury by counsel for plaintiff were prejudicial; but, as before stated, we deem the evidence so satisfactory and conclusive

upon the value of the services found by the jury that in this case we must hold them non-prejudicial.   Our conclusion is that plaintiff is entitled to a judgment in the sum of $1,900, being the aggregate of the sums of $1,040 and $860 found by the jury to be the reasonable value of the services rendered by the plaintiff to the decedent.   The judgment therefore will be modified by deducting therefrom the sum of $1,100, and as so modified is affirmed.

*By the Court.*—Judgment entered accordingly.

The following opinion was filed February 18, 1924:

ESCHWEILER, J. (*dissenting*).   The claimant, then eleven years old, went to live with the deceased in 1902; the latter, then living with her brother on his farm, to which she received a deed in 1910, when the claimant left.   The only subsequent periods during which services could have been rendered to support any allowance are as follows: January to May, 1912; September, 1912, to April, 1913; October, 1913, to May, 1914, when she married; December, 1914, to May, 1915; and in February, 1917, for three weeks. Not again until March, 1921, just at Mrs. Huskelhus' death. In the interval of 1915 to 1917 claimant and her husband took up and lived on a North Dakota homestead—a conclusive renunciation of a home in Wisconsin.

Of the several theories upon which plaintiff relied to support a judgment in her favor, the majority opinion has disposed of the one asserting the existence of a contract for the specific sum of $3,000 by declaring that the evidence cannot support the jury's finding in that respect, and on this point we all agree.

There is left then the question whether there was an express contract between the parties that claimant should be compensated for agreed services and further expressly providing, in order to avoid the statute of limitations that would

now effectively bar any claim, for payment to be deferred until the event of death. *Estate of Leu,* 172 Wis. 530, 535, 179 N. W. 796.

Such contracts when made usually, if not invariably, provide for continuous service until the time for payment. If at any one of the brief periods of service above specified there was any such contract made, it was terminated or breached by claimant's leaving such service. If it was made prior to claimant's marriage in May, 1914, in any one of the short periods, January to May, 1912, September, 1912, to April, 1913, or October, 1913, to the marriage, it is, I submit, a violent assumption under the record here to say that any such contract contemplated continuous service during Mrs. Huskelhus' life and postponed payment until the latter's death. But if such a contract was made, then certainly claimant's marriage and removal breached or terminated it. If a new contract was made, claimant then married, for the period commencing December, 1914, that surely was breached or terminated by the leaving and taking up the North Dakota homestead. There is left, then, only the three weeks' period in February, 1917, for the departure then is final so far as services are concerned.

A repeated examination of the record convinces me that there is no evidence to uphold the necessary conclusion to support the claim that there was ever any definite agreement between the two. If there ever was any express, definite contract, it was, by claimant's own acts, breached or terminated. Or if, on the other hand, there was any such express contract, then there could be no reliance upon any implied contract. *Estate of Andrus,* 178 Wis. 358, 190 N. W. 83.

The relationship between them was such that Mrs. Huskelhus may well have intended to provide by her last will for the claimant, and her expressions given in the evidence indicated that rather than recognition of a binding contract obligation; but she having failed to do so in manner and

form as required by law, I cannot agree that a court should make the gift.

I am authorized to state that Mr. Justice ROSENBERRY concurs in this dissent.

On October 16, 1923, a motion by the appellant for a rehearing was granted, and the cause was reargued on December 15, 1923. The following opinion was filed January 15, 1924:

VINJE, C. J. (*upon rehearing*). A reargument was granted in this case principally for the purpose of ascertaining whether or not there was sufficient evidence to show an agreement between plaintiff and the deceased that the services rendered by plaintiff were to be paid for at the death of the deceased. After hearing such argument we are of the opinion that the evidence sustains the judgment rendered upon the original hearing, and such judgment is therefore adhered to and affirmed.