ESTATE OF EDWINSON: TOLLACKSON, Respondent, vs.
SVEEN, Administrator, Appellant.

*March 10—April 5, 1927.*

*Limitation of actions: Promise to make payment at time of death:
Evidence: Sufficiency.*

1. If a deceased person had agreed to pay, at the time of his death
   or out of his estate, compensation for services rendered by a
   member of his household, such payment would not become
   due until his death, and the statute of limitations would not
   run until that time. p. 556.
2. Evidence in a proceeding to establish such a claim against the
   estate for services rendered twenty years before decedent's
   death is *held* insufficient to establish any agreement by de-
   cedent to compensate the claimant for services. p. 557.

APPEAL from a judgment of the county court of Vernon
county: D. O. MAHONEY, Judge. *Reversed.*

The cause was submitted for the appellant on the briefs
of *D. M. Langve* of Westby, attorney, and *Graves & Gul-
brandsen* of Viroqua, of counsel, and for the respondent on
the brief of *C. J. Smith* of Viroqua.

OWEN, J. When the claimant was of the age of nine
and one-half years she was taken into the home of Mrs.
Elina Costrud. She was an orphan and rather destitute.
She was not related in any way to Mrs. Costrud nor to the
deceased, nor ever legally adopted by either of them. She
lived with Mrs. Costrud about one year. Mrs. Costrud then
married the deceased, and she then became a member of the
household of the deceased. She continued to live with him
as a member of his family until the year 1905, when it ap-
pears that some difficulty arose in respect to her disobedience.
She then left and went to work for other parties as a do-
mestic servant. The deceased died on the 31st day of May,
1925. She filed a claim against his estate in the following
language:

"For services as housemaid and general workmaid in and

about the house and farm for a period of ten years, from 1895 to 1905 at $200 per year—$2,000 to be paid at the time of the death of Ole Edwinson."

There is no contention that the services for which claimant seeks compensation were rendered pursuant to any express agreement between the claimant and the deceased. Her claim, based on *quantum meruit,* was long since outlawed. The claim is based upon an alleged agreement made by the deceased shortly after the claimant left his home, that he would pay the deceased for her services at the time of his death. It is sought to bring the case within the rule of *Smith v. Freng,* 182 Wis. 349, 193 N. W. 996, 196 N. W. 887, 197 N. W. 170, where an agreement was reached between the contestant and the claimant that the services which the claimant rendered were not gratuitous and that they should be paid for at the death or out of the estate of the decedent. If such an agreement were made, then the amount of the compensation would not become due until the death of the deceased and, consequently, the statute of limitations would not run.

The evidence to sustain such an agreement in this case consists of the testimony of the claimant and her stepfather. It appears that a few days after she left, she returned to the Edwinson home, in company with her stepfather, and demanded compensation for her services. Peterson, the stepfather, testified that the deceased shook his fist at them and said he would "pay her for her work when he got through;" that he, Peterson, understood by that, that deceased would pay her when his estate was settled. Upon cross-examination Peterson testified that the conversation was in Norwegian, and that the word "fertig" used by Edwinson meant in English that he would pay when he was through or when he was ready; that the Norwegian word is interpreted either as "ready" or "through." The testimony of the claimant is to the same effect. She also testified that the deceased said,

Estate of Edwinson, 192 Wis. 555.

"I have been off and seen my lawyer, but now remember, *Hannah,* you can come with the law or you can come with the sheriff or any one you want to, but remember you will not get anything until my time comes." Sever Nersveen, a hired man working for the deceased, was present during this conversation, and he testified that the deceased said they would not get any money from him. Claimant talked about getting it by law, and the deceased said he was "going to find out just as quick as them fellows could do it," and that the deceased went to Viroqua to see a lawyer.

This is the testimony upon which the court found that there was an express agreement made by the deceased to compensate the claimant for her services at his death. We think there is nothing in this testimony to support such a finding. There is no question that the deceased shook his fist in their faces and said that "you can come with the law or you can come with the sheriff or any one you want to, but remember you will not get anything until my time comes." There was nothing said about the amount of her compensation. In view of the conceded attitude of the deceased, the conclusion that the deceased promised to pay her for her services at the time of his death is unwarranted and unreasonable. There is no reason apparent for postponing the payment until the time of his death if he recognized his obligation to make compensation. He was a prosperous farmer, and left an estate of more than $80,000. On the other hand, if the claimant considered that she was entitled to compensation, there was no reason why she should have waited for a period of twenty years before attempting collection. But we need not refer to the circumstances. The words attributed to the deceased cannot be construed as a promise to pay at the time of his death.

*By the Court.*—Judgment reversed, and cause remanded with instructions to disallow the claim.