ESTATE OF TEYNOR: TEYNOR, Appellant, vs. TEYNOR, Executor, Respondent.

*December 12, 1930—January 13, 1931.*

For the appellant there was a brief by *Graves & Earll* of Prairie du Chien, and oral argument by *J. S. Earll.*

For the respondent there was a brief by *Munson & Curran* of Prairie du Chien, and oral argument by *A. B. Curran.*

NELSON, J. Claimant is a daughter of John Teynor, who died on the 31st of December, 1928. She became twenty-one years of age in 1908. During the years thereafter and up to the month of April, 1922, she spent long periods of time at home and performed valuable services for her parents. She was the only unmarried daughter in the family during the time mentioned and her parents naturally looked to her for the performance of the services rendered.

The law covering situations of this kind is clearly established by numerous decisions of this court,

"Where a child lives in his parent's household, even after his majority, eating at his parent's table and rendering services such as are ordinarily rendered by the members of a household to each other, the presumption is that the board and services mutually rendered are intended to be gratuitous, and no contract to pay therefor on either side will be implied; but there must be an express contract shown either by direct and positive evidence, or by circumstantial evidence equivalent to direct and positive." *Taylor v. Thieman,* 132 Wis. 38, 43, 111 N. W. 229; *Pellage v. Pellage,* 32 Wis. 136; *Hall v. Finch,* 29 Wis. 278; *Wells v. Perkins,* 43 Wis. 160; *Ellis v. Cary,* 74 Wis. 176, 42 N. W. 252; *Martin v. Estate of Martin,* 108 Wis. 284, 84 N. W. 439; *Williams v. Williams,* 114 Wis. 79, 89 N. W. 835; *Millis v. Thayer,* 139 Wis. 480, 121 N. W. 124; *Geary v. Geary,* 67 Wis. 248, 30 N. W. 601; *Estate of Andrus,* 178 Wis. 358, 190 N. W. 83.

If we had before us a claim for services not barred by the statute of limitations, we should have no hesitation in saying that there is sufficient evidence in the record to overcome the presumption that the services were gratuitously performed, but that is not the situation. The last services were performed by claimant in April, 1922, more than six years prior to the death of her father, and her claim was therefore barred by the statute of limitations unless the signing over to her by her father of two certificates of deposit in 1927 operated to constitute her claim a mutual running account. We have given careful consideration to the circumstances involved in the indorsement by the deceased of the two certificates of deposit, with the result that we cannot say that the county court was wrong in holding that such indorsement and delivery did not result in a mutual running account so as to prevent the running of the statute of limitations. In *Estate of Leu,* 172 Wis. 530, 536, 179

N. W. 796, it was said: "Upon the principle now firmly established in this court, the bar of the statute runs on all services rendered more than six years prior to the death where payments have not been made so as to constitute a mutual account, as was the case in *Laughnan v. Estate of Laughnan,* 165 Wis. 348, 162 N. W. 169."

As hereinbefore stated, the claimant performed no services for the deceased after April, 1922. There is no evidence that her claim was ever thereafter called to the attention of her father. In 1922 the father was the owner of two certificates of deposit issued to him by the Bank of Prairie du Chien. These certificates were from time to time renewed, always in the father's name, but were kept in the possession of claimant according to her testimony. On or about April 25 or 26, 1927, the father suffered a paralytic stroke from which he never recovered. When claimant heard of her father's stroke she promptly presented the certificates to the bank and attempted to cash them without the father's indorsement. The bank, however, refused to cash them unless they were actually indorsed by the father. Claimant thereupon drove to the father's home and in the presence of her sister, a Mrs. Fleeman, attempted to have the father sign the certificates over to her. This he tried to do but could not complete his signature without claimant's assistance. At that time he had just recently suffered a stroke, could not talk or at best could hardly speak, was very poorly, "childish and blank minded." It is significant that Mrs. Fleeman, the sister, gave no testimony as to the circumstances surrounding the signing and delivery of the certificates to claimant although she testified at length upon the hearing. After the certificates were signed as aforesaid, claimant took them to the bank and had them immediately cashed, although by so doing she sacrificed the interest for several months already earned. Under all of these circumstances we cannot say that the mere signing of the certifi-

cates by the deceased amounted to a payment on account so as to thereafter constitute the claim a mutual running account and so as to prevent the running of the statute of limitations.

The claimant undoubtedly sensed the weakness of her claim as a mutual open running account as filed, and sought upon the hearing to prove an agreement with her deceased father that he would compensate her for the services rendered, by his will or out of his estate. Had such an agreement been proven, then clearly the statute of limitations would not have begun to run until the death of the father. *Smith v. Freng,* 182 Wis. 349, 193 N. W. 996, 196 N. W. 887, 197 N. W. 170; *Estate of Leu,* 172 Wis. 530, 179 N. W. 796.

But the court found that no such agreement to compensate was ever entered into between claimant and her deceased father. This finding of the court, if supported by the evidence, is, as we view it, conclusive of this controversy. We have examined the evidence with great care with the result that we cannot disturb this finding of the county court.

Appellant's claim, viewed as an account against her father's estate, having become barred by the statute of limitations, and her claim based upon a promise or agreement of her father to compensate her by his will or out of his estate not being supported by the evidence, we cannot do otherwise than affirm the judgment of the county court.

*By the Court.*—Judgment affirmed.