S. W. FARMER, Appellant v. H. N. UNDERWOOD ET AL., Appellees.

Personal services: COMPENSATION: BURDEN OF PROOF: EVIDENCE. Ordinarily the law implies a promise to pay for services rendered, but if the servant renders the service as a member of the family of the other and receives support as a relative, the presumption is that such service was gratuitous, in the absence of any express or implied agreement to pay therefor; and the burden is upon the one performing the service under such circumstances to show a mutual expectation of compensation therefor. In the present

case the evidence was insufficient to show any agreement or understanding that plaintiff, a son-in-law of defendant and whose family resided with the defendant, was to receive compensation for the services rendered, or to show a mutual expectation that plaintiff should receive compensation.

**Accounting:** PRESUMPTION: MATTERS INVOLVED. Where there was an
2   accounting between the owner and a cropper of land, which involved the dealings of the parties, it will be presumed that all claims between the parties were settled, including a claim for services upon the farm, in the absence of an affirmative showing otherwise.

*Appeal from Polk District Court.*—HON. HUGH BRENNAN, Judge.

TUESDAY, MARCH 24, 1914.

ACTION to recover for services rendered by the plaintiff to the defendant. Defense, that the plaintiff was, at the time the services were rendered, a member of defendant's family, residing therein with his wife and children, and receiving support from the defendant as a member of his family; and that there was no express promise to pay, and no circumstances shown which would negative the conclusion, from the relationship, that the services were gratuitous. Judgment for the defendant. Plaintiff appeals.—*Affirmed.*

*S. B. Allen,* for appellant.

*Parsons & Mills,* for appellees.

GAYNOR, J.—The plaintiff claims: That from the 1st day of October, 1899, up to and including the 18th day of November, 1905, at the instance and request of the defendant, he performed work, labor, and services for the defendant as a general farm hand. That he worked in all for the defendant, as such, for forty-four months and eighteen days; that the services so rendered were reasonably worth $1,117.34, on

which the following credits should be allowed: July, 1903, $5; August 12, 1905, $10. That, after allowing such credits, there is due him from the defendant the sum of $1,102.34, and for this he seeks judgment. The defendant, for answer, denies all the allegations of the plaintiff, and further alleges, as a defense to plaintiff's claim, that the plaintiff was a member of defendant's family; that he was a son-in-law of defendant; that he, together with his wife and children, lived with defendant as a member of defendant's family, during all the time for which he claims compensation for services; and that it was understood that the labor performed, if any, was gratuitous. Defendant, further answering, says that all the matters of account and other matters, if any existed, between plaintiff and defendant, have been heretofore fully settled and adjusted; that, prior to the commencement of this action, the plaintiff brought a suit against the defendant in Polk district court, and there was an adjudication between the plaintiff and defendant of all matters then existing between them in which one had any claim against the other. Defendant further says that in the fall of 1906 he had a full settlement with plaintiff for all labor done by the plaintiff up to that time. The plaintiff, for reply, denies all the affirmative matter set up by the defendant in its answer; alleges that the settlement referred to was made with reference to distinct matters, and in no way involved the matters herein in controversy. Upon the issues thus tendered, the cause was tried to the court and jury, and at the conclusion of all the testimony, on the motion of the defendant, the court directed the jury to return a verdict for the defendant, which being done and judgment having been entered upon the verdict, the plaintiff appeals.

Appellant assigns six errors. The first five may be grouped under one head, to wit: (1) The court erred in sustaining the motion of the defendant to direct a verdict for the defendant, on the ground that the services were rendered by the plaintiff to the defendant, as a member of defendant's

family, and that there was no evidence of an expressed contract for payment, and no sufficient evidence showing an expectation on the part of the plaintiff to receive pay, and no expectation on the part of the defendant to pay for such services.   (2) The court erred in finding that there was a settlement between the parties of all matters involved in this suit for which plaintiff might, at the time of the settlement, have had a claim against the defendant.

The evidence tends to show that the plaintiff, at the time of the happening of the matters hereon sued for, was the son-in-law of the defendant; that, prior to his coming to live with the defendant, he lived at Prairie City;

1. PERSONAL SERVICES: compensation: burden of proof: evidence.

that he married plaintiff's daughter in 1897; that along about the 1st of October, 1899, he, with his wife and two children, came to live with the defendant; that at that time the defendant was occupying a farm of about 200 acres and was engaged in general farming; that plaintiff and his family came to live with the defendant, at the request of plaintiff's wife; that her mother was in very poor health; that she wanted to go and make her home with her father and mother; that, because of the wife's solicitude for her mother and desire to live in her home, plaintiff sold out his business at Prairie City and took his family to live with the defendant.   Plaintiff claims that he worked for the defendant continuously from October, 1899, to March 1, 1900, about five months; that he quit then and went away, leaving his family with the defendant.  He came back about the 1st of May and then worked for the defendant, milking cows and cutting wood and all kinds of farm work, until about November, 1900; that he then left and did not return until about the 1st of February, 1901; that he then stayed and worked for the defendant until about the 1st of March, 1903, at which time he came back to the farm; that, during his absence this time, he rented a house in town and stayed in town during the summer; that he came back to defendant's about July 1, 1903, and worked on the farm; that

he continued to work until about the 18th of December, 1904, and then went to Oklahoma; that he came back about April, 1905, and stayed there until November 18th of that year and did work on and about the farm.

Plaintiff testifies: That during the month of August, in 1905, not having any money from Mr. Underwood, he thought he needed a little pocket money. Because of that, he contemplated going up into Minnesota to harvest. That, when defendant heard he was going away, "he said, 'If you want to work, you can work right on here, and I will give you $25 a month.' So I stayed and worked then, but he never paid me any money except $10 paid that day. Prior to this time, he had never fixed any price upon the services." During all this time that plaintiff was with the defendant, the plaintiff says he never had any dealings with the defendant that had anything to do with the labor performed by him upon the farm. It appears that during all the time, while plaintiff was there and during his absence, plaintiff's wife and children remained with the defendant and were cared for by him; that during the years up to the 12th of August, 1905, nothing was said between the plaintiff and the defendant as to wages.

It affirmatively appears that there was no express agreement or understanding between the plaintiff and defendant that the plaintiff should charge for his services, or that the defendant should pay him therefor, up to August, 1905; that the first talk had between them, touching compensation for services rendered, was in August, 1905, and this talk, as we interpret it, related only to future services to be rendered. At least, this is the apparent understanding of the defendant at that time. It is not claimed by the defendant that this talk of August, 1905, referred to, or had any relationship to, any services theretofore rendered by the plaintiff, and we are satisfied that such a claim, if made, would not be justified by what was said and done at that time, under the circumstances under which the conversation was carried on. It appears from this record that the plaintiff came and went and returned

as he pleased; that he rendered such services as to him seemed proper while with the defendant; that the defendant, in no way, assumed to direct or control his conduct, as to when he should go, when he should return, or as to what he should do when present on the farm. There is absolutely nothing to indicate that the defendant, at any time, understood that the plaintiff was working for him in expectation of remuneration. There is nothing to indicate that the defendant did not understand that plaintiff was there with his family, as a member of defendant's family, receiving support for himself and family, and that the services rendered by him were rendered in that capacity. It is true that the plaintiff claims that he expected compensation and that he kept a memorandum of the services rendered for defendant, which he claims he lost and was not able to produce upon the trial.

It is plain from this record that the plaintiff and his family, his wife and children, lived with the defendant as a member of defendant's family; that that relationship was established and continued during all the time covered by plaintiff's claim; that they received support from defendant during all this time; that there was no promise, or agreement, or understanding expressed between them as to any compensation to be given plaintiff for his services. If therefore the plaintiff is entitled to recover for any services rendered up to August, 1905, it must be by reason of an implication of law that the services were to be paid for, arising from such a condition of facts that it is apparent therefrom that the plaintiff intended to charge for his services during that time, and the defendant intended to pay him therefor.

It is a significant fact, in this case, that during all this time plaintiff made no claim for compensation; that he came and went as he pleased; that the defendant assumed no right to direct his coming and his going, or the character or kind of services which he should render. It is not sufficient for plaintiff to show that he had a secret intent to charge for his services. The evidence must go further and disclose a mutual

purpose and intent of the parties, touching the services rendered. That is, it must disclose an intent, on the part of each, that the service rendered should be paid for, before the presumption that the services were gratuitously rendered, under such conditions, is overcome.

In *Scully v. Scully*, 28 Iowa, 548, this court, speaking through Judge Cole, in a case involving the question here under consideration, said: "Ordinarily and without more, where one person renders services for another which are known to and accepted by him, the law implies a promise on his part to pay therefor. But where it is shown that the person rendering the service is a member of the family of the person served and receiving support therein, either as child, a relative, or a visitor, a presumption of law arises that such services were gratuitous; and, in such case, before the person rendering the service can recover, the express promise of the party served must be shown, or such facts and circumstances as will authorize the jury to find that the services were rendered in the expectation by one of receiving, and by the other of making, compensation therefor." This doctrine has found such substantial lodgement in the jurisprudence of this state and has been so consistently followed that the citation of further authority for this rule is unnecessary.

It appearing from the testimony in this case, without dispute, that the plaintiff was, at the time he claims these services were rendered, a member of defendant's family, residing therein with his own family, and receiving support as such, that no recovery can be had unless it affirmatively appears, either that there was an express contract to pay for the services rendered, or that the services were rendered under such circumstances as negatives the conclusion that they were gratuitously rendered, and affirmatively shows that there was a mutual expectation between the plaintiff and defendant that one should receive, and the other should pay, for such services as were rendered. The burden is on the plaintiff to establish this state of facts, and we think that he has wholly failed

to do this and to carry his burden to a successful issue, and that there was no error of the court in sustaining defendant's motion for a directed verdict upon this issue.

It appears, however, that in August, 1905, there was an express agreement to pay for services to be rendered thereafter by the plaintiff; that services were rendered, and this

2. ACCOUNTING: presumption: matters involved.

the plaintiff would be entitled to recover for, unless the defendant has affirmatively shown that there was a settlement, in which this sum was included, as claimed by the defendant. It appears that after the 18th day of November, 1905, a controversy arose between the plaintiff and defendant touching the division of profits in certain land. It appears that certain other dealings were had between the parties concerning the loaning of money and the purchase of grain, and that these matters were discussed and talked of prior to any settlement; that thereafter the plaintiff commenced an action against the defendant to recover what he claimed as his share of the profits in the land deal. Defendant filed an answer setting up certain matters and asking that an accounting be had, between the plaintiff and defendant, of all matters then in dispute between them, or unsettled; that thereupon the cause was transferred to equity, and the trial was had and a judgment entered.

Now it is apparent from this record that each party asserted then, against the other, all claims which he had and might insist on, in the adjustment of their mutual accounts, and it was the intention of both parties to adjust all their mutual accounts, and we feel that the record shows that such was not only the intention, but that it was actually done at that time, and, without setting out the record in this opinion, we are satisfied that as to this balance there was, prior to the commencement of this action, a mutual settlement and adjustment of all claims held by each against the other, and this done without any fraud, mistake, or concealment, which might avoid such settlement.

We are satisfied the court did not err in holding that

this matter was settled and adjusted between the parties, for the reason that, when the cause was transferred to equity, it was done, not for the purpose alone of determining what was due the plaintiff for his half interest in the farm, or his half interest in the profits, but also for adjusting and settling all other matters then pending between them.   At least, in such an accounting as was had, the presumption is that all claims between the parties were then settled and adjusted, unless the contrary affirmatively appears, and it does not so affirmatively appear.

We find no reversible error, and the cause is—*Affirmed*.

LADD, C. J., and DEEMER and WITHROW, JJ., concur.