[Civ. No. 13108. First Dist., Div. One. Oct. 8, 1946.]

DOROTHEA G. EKLUND et al., Appellants, v. MAXINE D. EKLUND et al., Respondents.

Hilary H. Crawford for Appellants.

Henry F. Boyen and Frank J. Fontes for Respondents.

WARD, J.—This action to impress a lien for premiums advanced on a combination of five life insurance policies, was instituted by Dorothea G. Eklund, the mother of Maxine D. Hawke, who married Charles E. Hawke prior to the filing of the complaint. O. E. Eklund, the second named plaintiff, is the husband of Dorothea G. Eklund and the stepfather of Maxine.

The respective dates of issuance and the principals of the policies, as set forth by respondents, are as follows: (1) April 4, 1927, 20-year endowment, $184; (2 and 3) January 12, 1931, two 20-year endowment, $450 each; (4) August 11, 1930, 20-year endowment, $1,000, and (5) February 17, 1937, 10-year endowment, $1,000. The last policy was issued when defendant Maxine was 21 years of age. Defendant Maxine Eklund is named in each policy as the insured. Policies 1, 2 and 3 are payable to the insured without a named beneficiary in case of her death, in which event a clause in the respective policies permits payment to be made to the executor or administrator of the insured's estate. The policies also provide that under specified circumstances "It is understood and agreed that the said Company may make any payment or grant any non-forfeiture provision provided for in this Policy to any relative by blood or connection by marriage of the Insured, or to any person appearing to said Company to be equitably entitled to the same by reason of having incurred expense on behalf of the Insured, for his or her burial." In policies 4 and 5, "in case of the prior death of the Insured," the mother of the

insured is named as the beneficiary. In the last two policies "The right to change the Beneficiary has—been reserved" by the insured.

Plaintiffs, the mother and stepfather, paid all of the premiums out of their community funds to the Prudential Insurance Company of America. The trial court found "that all of the premiums on the aforesaid policies were paid by the said DOROTHEA G. EKLUND voluntarily and without expectation of reimbursement and solely because of the love and affection of the plaintiffs for the defendant, MAXINE D. HAWKE, who is the natural child of the plaintiff, DOROTHEA G. EKLUND, and who was treated in all respects by the plaintiff, O. E. EKLUND, as his natural child during all of the times herein mentioned." The main question involved is the intention of the parties.

"If services are rendered or goods delivered without any intention or expectation of payment, there can be no recovery therefor." (17 C.J.S. § 46, p. 388.) The mother testified: "I didn't expect to get any insurance from my daughter. I didn't take them out for that idea. . . . My daughter and I were very close for a good many years." The record further shows: "A. Well, I don't think there would have ever been any question about it between us at all if her husband had not got the idea that she was signing away something that belonged to him. Q. In other words, if her husband had not interfered with the arrangement, and your daughter had continued to live at home, or married somebody of your choice, you would have continued paying the premiums, would you not? A. Well, I paid them, anyway. Q. That is what you have done? A. Yes, but I don't think there would have been any friction about it." Speaking of the policies, the daughter, referring to her mother, testified: "Oh, yes, she always said they would be a fine little nest egg for me some day to do with as I would like to do, they would come in very handy, maybe, when I would really need them." This evidence was sufficient for the trial court to conclude that there was no intention or expectation on either side that reimbursement should be made by the daughter to the mother of the premiums paid. The Supreme Court in *Crane* v. *Derrick*, 157 Cal. 667, 672 [109 P. 31], said: "Our own decisions appear to support the doctrine that to authorize compensation in such cases the circumstances must be such as to warrant the inference that it was the expectation of both

parties that compensation should be made. (*Murdock* v. *Murdock,* 7 Cal. 513; *Friermuth* v. *Friermuth,* 46 Cal. 42.) And it is emphatically declared in *Murdock* v. *Murdock,* that it is the expectation of the parties *existing while the relation continued* that is to control, and that no circumstances occurring afterwards can convert that into an *implied contract,* that was not so before."

■ In addition to the testimony of the mother and the daughter—that reimbursement was never contemplated—the trial court had the right to consider that where services are rendered by a near relative or member of a famliy without an agreement thereon an inference that payment or compensation is to be made is not usually drawn. As between persons not related it is usually implied that services rendered by one to another are to be paid for at their fair value, but "This inference is not usually drawn, however, where services are rendered another by a near relative or member of the family circle. Even though there is no blood relation between the parties, if the services are rendered by one who has been adopted as a member of the household, there will also ordinarily be no inference of a promise to pay." (Williston on Contracts (rev. ed.), vol. 1, § 91A, pp. 282-283.) In *Ruble* v. *Richardson,* 188 Cal. 150, 157 [204 P. 572], quoting from 1 Beach on Contracts, section 653, pages 788, 789, the court said: " 'Ordinarily, where services are rendered and voluntarily accepted, the law will imply a promise upon the part of the recipient to pay for them; but where services are rendered by members of a family, living in one household, to each other, or necessaries are supplied by one near relation to another, the law will presume that they were gratuitous favors merely, prompted by friendship, kindness and the relationship between them.' " "Where one person renders services for another, or supports another, the relationship of the parties is of great weight in determining their intention for the purpose of saying whether a contract to pay is to be implied. The question in all cases is one of intention, but relationship or membership in the family may rebut the ordinary presumption of contractual intention." (17 C.J.S. § 46, p. 388; 28 R.C.L. §§ 15, 16, pp. 680-682.) The rule was recognized and approved in *Ferguson* v. *Dam,* 140 Cal.App. 701, 705 [35 P.2d 1072], as follows: "The jury awarded respondent the full amount of the note, thereby impliedly finding against appellant upon the issue of the existence of the alleged agreement and further impliedly

finding that said services were rendered by appellant for his mother gratuitously.'' (See, also, *Schaad* v. *Hazelton,* 72 Cal.App.2d 860 [165 P.2d 517]; *Newbert* v. *McCarthy,* 190 Cal. 723 [214 P. 442].)

It is the contention of the appellants that a beneficiary who has advanced premiums for the purpose of keeping a life insurance policy alive, is entitled to an equitable lien. To support this principle they cite Pomeroy's Equity Jurisprudence, volume 3, fourth edition, section 1243; 14 California Jurisprudence, page 539, section 91; *Stockwell* v. *Mutual Life Insurance Co.,* 140 Cal. 198 [73 P. 833, 98 Am. St.Rep. 25]; *Morgan* v. *Mutual etc. Ins. Co.,* 16 Cal.App. 85 [116 P. 385, 389]. The quotations from Pomeroy and California Jurisprudence do not touch upon the intention or expectation of payment by one near relative in a family to another. To the cases cited in Pomeroy, California Jurisprudence, etc., there may be added 88 American Law Reports 239, which involves premium payments made where a reasonable inference at least may be drawn of an expectation of reimbursement. As previously stated appellants rely on *Stockwell* v. *Mutual Life Ins. Co., supra,* which held that payment of premiums by one beneficiary which kept a policy of life insurance alive for the benefit of several beneficiaries, which policy otherwise would have lapsed, should be reimbursed to the paying beneficiary out of the proceeds of the policy; and on *Morgan* v. *Mutual etc. Ins. Co., supra,* in which the court held that payment of premiums made under a void assignment of a policy gave the payor a right to the proceeds of the policy as against the named beneficiaries when the payments exceeded the amount of the proceeds. In both cases it is to be noted that the payor of the premiums was not a mere volunteer: In the first he had an interest to protect which he could not protect without paying for the other beneficiaries; in the second, at the request of the insured and his then beneficiary, and with a supposedly valid assignment, the payor kept alive for them the policy which would otherwise have lapsed. It cannot be said that either case lends support to appellants' position, where the contest is between the insured, who did not request the payment of the premiums, and the possible beneficiary, the rights of any of whom upon maturity were subject either to the insurance company's choice of payee or the insured's right to change the beneficiary. The plaintiffs had no right which they could protect by the payment of the pre-

miums. The position of the appellants in this respect is not based on solid legal grounds.

The closing brief stresses the contention that there was no gift because there was no delivery of the policies. The retention by appellants of the policies is a neutral factor which does not, standing alone, assist either party without evidence concerning the intent of such retention. Ordinarily where a donor exercises custody and control over property, an implied agency arises from the relationship, as appears in this case— "all other essentials of a completed gift existing, the gift is not thereby affected or invalidated." (*Lynch* v. *Lynch,* 124 Cal.App. 454, 461 [12 P.2d 741].)

Other points are raised by respondents which in view of the conclusion reached on appellants' main contention need not be considered, except the plea of the statute of limitations. (Code Civ. Proc., §§ 339, subd. 1, 343.) In support of this contention respondents set forth in their brief: "It will be observed that there can be no cause of action on account of payment of premiums until the death of the insured. The insured in this case is the respondent, Maxine D. Hawke, a party to this proceeding, and admittedly none of the policies have matured by the lapse of time, or the death of the insured." In the Stockwell case, *supra,* it is said (p. 201): "It is quite true that there was no legal liability resting upon any of the beneficiaries to pay the premiums accruing upon the policy, and that the payments made by respondent were in that sense voluntary. But it was not in the power of respondent to sever her interest in the policy from that of the other children of the assured, and keep alive the policy for her own benefit by paying one fifth of the premiums as they became due. She was compelled to pay the entire premium as it accrued, or forfeit all interest under it." There is no merit in respondents' position that the action was prematurely brought. The holding in the Stockwell case, *supra,* would have no application to a suit between an insured and his beneficiary where the beneficiary was claiming an interest adverse to the insured, in the event he had such an interest. The best way to protect any lien which the plaintiffs have in this case, where they have knowledge that the insured is claiming adversely to them, is to bring suit prior to a change in beneficiaries, maturity, or a cashing in of the policies prior to maturity. The suit is in the nature of an action for declaratory relief and the trial court so treated it.

The testimony heretofore referred to, corroborated by the circumstances surrounding the various insurance transactions, plus the reasonable inference drawn from the relationship of the parties, warranted the trial judge in entering the judgment "that Maxine D. Hawke is the owner of and entitled to the immediate possession of all of the policies hereinafter described, free from any lien or claim of plaintiffs, or either of them, and her title to said policies is hereby established and quieted and said plaintiffs are hereby forever debarred from asserting any claim against said policies and it is hereby further ORDERED, ADJUDGED AND DECREED that said MAXINE D. HAWKE has the right to change the beneficiary in each of said policies." The record shows that the policies were not intended as life insurance policies for the benefit of the mother.

The judgment is affirmed.

Peters, P. J., and Schottky, J. pro tem., concurred.