Jennie X. Smith died testate on June 2, 1947. Her last will and testament dated May 5, 1947 was probated, and the plaintiff herein qualified as executor thereunder. After certain specific bequests, the testatrix left her residuary estate to her three children, George Smith, Arnold Smith and Gladys Bedell, equally, to be paid as follows: — one-third to *Page 238 
Gladys Bedell, and the other two-thirds to Arnold and George Smith in monthly instalments of $50 or more, at the discretion of the executor.
Some years before her death, Jennie X. Smith transferred her bank savings accounts from her individual name into the names of herself and her daughter, Gladys M. Bedell or Mary G. Bedell. At the time of her death, three such bank accounts with total deposits of approximately $18,500. existed; two with the Orange Savings Bank, in the name of "Jennie X. Smith or Mary G. Bedell" and one with the Orange Valley Bank in the name of "Jennie X. Smith and Gladys M. Bedell."
On September 5, 1947, Gladys M. Bedell, the defendant herein, requested the executor to transmit to her 50 per cent of the proceeds of the three bank accounts. On March 2, 1948, she claimed all the moneys on deposit in said accounts. Three days after her mother's death, she signed two withdrawal checks on two of the joint savings accounts, each payable to the order of the executor for $3,000. The funds so withdrawn were invested in a mortgage made to the executor of the decedent's estate as mortgagee, which mortgage has since been paid and the proceeds deposited in the executor's account.
There was no testimony that any part of the money in the joint savings accounts belonged to Gladys M. Bedell or that she ever during her mother's lifetime claimed any part of it. The first time she made any claim was about three months after her mother's death.
The complaint seeks a judgment to distribute the residue of decedent's estate, including the proceeds of the accounts herein referred to. The defendant, Gladys M. Bedell, in her answer claims all the cash on deposit in the savings accounts, and that decedent in her lifetime made a specific gift to her.
There was in evidence an earlier will of decedent, dated June 6, 1942, five years prior to the date of the will which was probated. While the will of decedent dated May 5, 1947, superseded the earlier will by revocation, two of the joint accounts now in dispute were in existence when the earlier will was made, and therein the attitude and intention of the decedent with respect to the disposition of the joint accounts is *Page 239 
unmistakably stated, viz.: "Joint bank accounts were always intended by me to belong to and to be payable to my estate if I predecease my daughter * * * that the funds deposited in said joint bank accounts were always exclusively my funds and monies, and no part of the same were the funds or monies of my said daughter, and that said joint bank accounts were created merely for the sake of convenience during my lifetime, so that my said daughter could draw therefrom during my lifetime such monies as I might need; therefore, the funds to the credit of said joint bank accounts are my funds and at the time of my death are and will be part of my estate devised and bequeathed by this my last will and testament."
On behalf of the defendant, Gladys M. Bedell, it is argued that the will of 1942 was "admittedly void and nugatory" because it was revoked by the later will. Of course, the prior will is invalid for testamentary purposes, but it is of some evidential value as a declaration of the intention of the decedent regarding the bank accounts, to be considered together with the other evidence in the case. The later will made no mention of the joint accounts, but it is not to be inferred therefrom that the testatrix had completely changed her intention with respect to the moneys on deposit.
The proofs further show that the decedent always retained possession of the bank books. They were hidden in a small steel cash box, the key to which was kept in a place known only to herself; and it was only shortly before her death that she told her children where to find the key and that the bank books were in the box. It would thus appear that the decedent negatived any presumption that the moneys in the joint accounts were to be the property of her daughter. Moreover, after decedent's death, the bank books were delivered to the executor. All the deposit slips offered in evidence depositing moneys in the joint accounts were made out in the name of "Jennie X. Smith." From the withdrawal slips offered in evidence, it appears that, with the exception of the two withdrawals for mortgage investment, Gladys M. Bedell made only four withdrawals from the joint accounts — and those, after her mother's death. *Page 240 
It is settled law that merely placing the name of the defendant, Gladys M. Bedell, on the bank signature card with that of the decedent, permitting the withdrawal of funds by either as a matter of convenience, does not in itself give decedent's daughter the proceeds of the bank accounts. It is elementary that to sustain a gift inter vivos, there must be not only a donative intention, but a complete surrender by the donor of all control over the property given. Skillman v. Wiegand, 54 N.J. Eq. 198(Ch. 1896). Taylor v. Coriell, 66 N.J. Eq. 262 (Ch.
1904). Rush v. Rush, 138 N.J. Eq. 611 (E. A. 1946).Stiles v. Newschwander, 140 N.J. Eq. 591 (E. A. 1947).Bendix v. Hudson County National Bank, 142 N.J. Eq. 487 (E. A. 1948).
Judgment will be entered in accordance with the foregoing conclusions.