[Civ. No. 8719.   Third Dist.   Apr. 5, 1956.]

THOMAS J. McCAFFREY, Appellant, v. NORBERT CRONIN, Respondent.

O'Hara, O'Hara & Healy and Thomas N. Healy for Appellant.

Carroll, Burdick & Davis for Respondent.

VAN DYKE, P. J.—This is an appeal from a judgment in favor of the defendant in an action brought against him by plaintiff to have the rights and interests of the parties declared in respect of certain commissions paid defendant as soliciting agent for an employee group insurance policy issued to Retail Clerks' Union, Local Number 373 of Solano and Napa Counties, by Occidental Life Insurance Company.

Mr. Stanley Lathen, during the period here involved, was the local secretary of the union, with headquarters in Vallejo, and defendant, hereinafter called ''respondent,'' was an insurance broker with offices in San Francisco and Los Angeles. Plaintiff, hereinafter called ''appellant,'' during the same period was an insurance agent for Occidental Life Insurance Company. In February, 1950, Lathen, for his union, contacted respondent, requesting that he attend a membership meeting of the union and address the members with regard to group life, health and accident insurance plans. Respondent had participated in negotiating several such plans on behalf of unions in San Francisco. This respondent did and in April began to act in the status of insurance broker for the union in respect of the proposed group insurance plan. While these things were going on the union was also negotiating with employers of members of Local 373, it being contemplated by the union that the cost of the plan would be borne by the employers. Tentatively the negotiations had arrived at an employer charge per employee of $8.66 per month and the union, with the aid of respondent as its broker, began inviting various companies issuing group policies to, in effect, bid for the business by proposing benefits which could be purchased for the amount of money expected to become available. Among others submitting plans was Occidental Life Insurance Company and its plan was submitted through appellant, aided by staff employees of the company specializing in group insurance plans. Some 20 companies presented their plans and among others was Bankers' Life Insurance Company, for which respondent was a soliciting agent. That company had been the one whose group plan for such insurance had been obtained through the activities of respondent for the San Francisco unions. For some time respondent had not been an agent for Occidental, but became one in May of 1950. At a meeting of the representatives of the employers and the union, held on June 14, 1950, the Occidental plan based on the anticipated payment by the employers of $8.66 per month per employee

was approved as the best plan offered and Occidental was informed of this action by the representatives of the two groups. It was well known to both groups that appellant, as agent for Occidental, had been quite active in attempting to sell the Occidental plan.

On June 15th, following the June 14th meeting, respondent, as agent for Occidental, obtained the signature of Lathen, as agent for the union to whom the policy was to be issued, to an application for the issuance of the proposed policy and as agent forwarded the application to Occidental. This action placed respondent in such a position that when the policy should be issued to the union he would be rightfully entitled to the payment to him by Occidental of the usual commissions for placing insurance business of that type. Before issuance of the policy, however, it was required that the union and the employer group should formalize their anticipated agreement concerning the issuance and maintenance of the policy, including payment by the employer group of the cost of the insurance based on the number of employee members of the union employed by each employer and including also such agreements as the two groups should make concerning implementation and operation of the plan. Before the policy was issued, therefore, a written agreement was executed between employers and union, called the ''Supplemental Agreement.'' That agreement contemplated that each group should have the assistance of a qualified person in the operation of the plan. The employers selected appellant, naming him in the agreement as their ''insurance consultant.'' The union selected respondent, calling him their ''insurance broker.'' The agreement treated of the matter of compensating these assistants and paragraph 9 of the written document contained the following language: ''The Employer party to this agreement may appoint an insurance consultant who shall have full access to the policies, insurance company records, and other pertinent material, in the same manner as shall the broker appointed by the Union. It is the intent of the parties that the consultant appointed by the Employer shall be equitably compensated from any commissions paid under this Plan, and such compensation shall be determined by the consultant appointed by the Employer and the Union broker between themselves, and the parties hereto shall be held responsible therefor in no manner.'' The employers and the union having thus agreed, Occidental issued its policy to the union as its insured and in due time began paying to respondent the regular commis-

sions for the placement with it of the business. Although the record shows that appellant, deeming himself the procuring cause for the issuance of the policy so far as Occidental was concerned, made some claims to the company itself for a share at least in the commissions to be paid, the company took the position that in the regular course of its business it was bound to pay and would pay commissions only to the agent who forwarded the application for insurance to it. Thereafter appellant began this action against respondent, claiming that, in view of all the circumstances and under said paragraph 9 of the supplemental agreement between the employers and the union, he was entitled to receive from respondent, as commissions were paid, a share of those commissions. In his complaint he alleged that he was equitably entitled under said paragraph 9 to 80 per cent of the commissions paid respondent as and when paid to him, it being appellant's claim that the amount of his work and services in obtaining the insurance and maintaining it and servicing the plan exceeded the work and services of respondent.

During the trial much testimony was addressed to the subject of the rights, if any, of the appellant under said paragraph 9 to demand and receive of respondent a share of the commissions paid respondent, which commissions were paid from time to time as the plan was kept in operation. The efforts of appellant and respondent in both effectuating the issuance of the policy and in implementing the plan thereafter as advisers to the employer and the union groups from the time each became active in the matter were the subject of much testimony, as was also the general customs of the insurance business in the payment of commissions and the division thereof among agents and brokers where more than one had participated in effecting insurance.

The problem presented to the trial court was twofold. By reason of what had occurred and by reason of the execution of the supplemental agreement containing its paragraph 9, had there arisen in favor of appellant enforceable rights against respondent to share in commissions paid him? If that were so, then how should the provision for equitable division of commissions between the two men be construed and applied? By his complaint appellant had pleaded the facts and many of his allegations had been controverted by respondent's answer. These denials of facts pleaded had apparently been too broad. So when respondent was called under section 2055

of the Code of Civil Procedure he was questioned as to whether or not certain denials were genuine and admitted that in many instances the allegations of facts as pleaded were true. He was then questioned about a tender he had made to appellant of 10 per cent of commissions received to the date of the tender, which tender had been rejected. The following appears in the record: "Q. Mr. Cronin, I understood you to state prior to the recess this afternoon that upon making that tender of 10 per cent for the months of October and November, 1950 in the amount of $222.46, you did so because of the Supplemental Agreement between the employers and the union, and particularly with reference to paragraph 9 thereof, providing that the division would be equitable between the union broker and insurance consultant for the employers, is that true? A. Yes, sir. Q. Is your position then with respect to the complaint in this matter simply that while under the understanding Mr. McCaffrey is entitled to something that he is not entitled to any more than 10 per cent? A. That's right. The Court. That is entirely the position you are taking in this case? A. That is right, your Honor." No objection or protest was made by his counsel nor was any attempt made thereafter to show he spoke inadvertently or by mistake. Thereafter much attention was paid during the trial to the question of what would constitute an equitable division under the circumstances of commissions received by respondent.

At the close of the trial the court found as follows: Between April 1, 1950, and about July 1, 1950, there was negotiated, executed and established between the union and the employers a plan of group insurance whereby the employers would pay the premiums, the members of the union would receive various benefits and the insurance would be written by Occidental. On June 14th the union applied to Occidental for a policy, the application designating the union as the policy holder and the respondent as the broker for the insurance. The application was accepted and the policy issued and Occidental thereafter paid to respondent all commissions earned by him as broker. Appellant did not perform any services for respondent of a character usually charged for nor did respondent avail himself of any services performed by appellant, the nature of which obligated him to compensate appellant therefor, and such services as had been performed by appellant at any time were performed for Occidental whose agent appellant was. The course of conduct between appellant and respondent had not manifested

any agreement, express or implied, that appellant was rendering a service to respondent and that respondent intended to pay therefor. There existed no agreement between appellant and respondent under which appellant was entitled to be paid any money or compensation of any kind by respondent either from commissions paid him by Occidental or otherwise. Although in the supplemental agreement appellant became insurance consultant for the employers, neither the agreement between the union and the employers nor such designation of appellant as insurance consultant for employers created or resulted in any contractual relationship between appellant and respondent and the two had not in fact ever reached an agreement between them as to any compensation payable to appellant from commissions received by respondent. Although, after receipt of commissions, respondent had tendered 10 per cent thereof to appellant and appellant had refused to accept the tender, the two had thereafter reached no agreement concerning any sharing by respondent with appellant of commissions received or to be received. Failing such an agreement, respondent was not obligated to pay anything to appellant under said paragraph 9 of the supplemental agreement. Thereafter judgment that appellant take nothing as against respondent was entered. Motion for new trial was made and denied and this appeal was taken.

The judgment must be reversed. The record shows that from the beginning the group insurance plan required throughout its initiation and maintenance more than the issuance of a policy from Occidental to the union. It required a negotiated agreement between the union and the employers for the issuance of the group plan policy, and also for the performance after policy issuance of burdensome duties in the exercise of significant rights by each party to the supplemental agreement. The supplemental agreement between the employers and the union contemplated and treated of not only the issuance of the policy but of the maintenance and implementation of the plan, involving such matters as collection of premiums from participating employers, the opening of the plan to admit other employers and their employees, the processing of claims for benefits from hundreds of employees, and the keeping of proper records of such matters. The processing of claims would inevitably develop controversies as to the scope of coverage, the eligibility of the claimant for benefits and other matters requiring expert

investigation and advice to both parties to the supplemental agreement. For instance, respondent testified that for a long period of time his duties as adviser to the union required the use of many employees by him in the performance of his duties as "broker" for the union under the supplemental agreement. Appellant likewise testified that he, too, had spent much time and put out much effort as "insurance consultant" for the employers. Without going further into detail it can be said that the policy and the supplemental agreement constituted a package deal, of which paragraph 9 was a material component part. All the circumstances considered, it is apparent that to the initiation, maintenance and working of the group plan, the supplemental agreement was of vital import and that the provisions of paragraph 9 for the furnishing of the services of expert advice and aid to each group was of such import that without it the parties might not and probably would not have gone forward.

When, therefore, and before any commission had been earned and with full knowledge of the provisions of paragraph 9 of the supplemental agreement, respondent undertook the duty of "broker" to the union in the matter of servicing the plan, knowing that the agreement gave to the employers the right to have for their benefit an "insurance consultant" who would be required likewise to service the plan, and when he did this with knowledge that under said paragraph 9 the "broker" to the union and the "insurance consultant" to the employers would neither receive compensation for their work under the supplemental agreement except and unless it was derived from commissions paid to him by Occidental, he bound himself by an implied contract to the equitable division of those commissions with the appellant. An implied contract is defined in the Civil Code as "one, the existence and terms of which are manifested by conduct. (Civ. Code, § 1621.)

And the case law has established that intention to pay and expectation of compensation for services rendered may be inferred from conduct where equity requires it as well as from direct communications between the parties. (*Bean* v. *Wilson*, 120 Cal.App.2d 58 [260 P.2d 134].) It is said that an implied contract is one not expressed by the parties but gathered from the facts showing a mutual intent to contract. (*Travelers Fire Ins. Co.* v. *Brock & Co.*, 47 Cal.App.2d 387 [118 P.2d 25].) "Where a party has conferred upon another, with the assent of the latter, a benefit which was not intended as a gratuity, . . . , the law implies a promise

on the part of the party receiving the benefits to pay the reasonable value. . . ." The principle was thus stated in *DeRosier* v. *Vierra,* 109 Cal.App.2d 291, 294 [240 P.2d 660] : " 'When services are rendered by one person, from which another derives a benefit, although there is no express contract or agreement to pay for the services, there is a "presumption of law" which arises from the proof of services rendered, that the person enjoying the benefit of the same is bound to pay what they are reasonably worth.' " ▮ The doctrine of implied contracts has its foundation in the doctrine of unjust enrichment. (*Anderson* v. *Doolittle,* 97 Cal.App.2d 836 [218 P.2d 848].)

▮ We think the record here compels a finding that respondent and appellant entered into an implied contract for the division of commissions under the terms of paragraph 9 of the supplemental agreement. The quoted testimony of respondent is most significant in this regard. It is the claim of appellant that it amounted to a judicial admission tantamount to an amendment to the answer admitting that respondent was obligated to share commissions with appellant, leaving for determination by the court only the question of what constituted an equitable division thereof. We think it unnecessary to determine whether respondent's testimony amounted to such a judicial admission. Considering the whole record, we hold that the acts and conduct of the parties hereto created an implied obligation for division of commissions and that the findings of the court contrary to this conclusion lack support in the record.

▮ In our view it is immaterial here that respondent as soliciting agent filing the application for insurance with Occidental became, under the company's rules, entitled, to the complete exclusion of appellant, to the payment from Occidental of the full commission for the placement of the insurance. He impliedly agreed that, notwithstanding he was so entitled to initially receive the commissions, said commissions as received should constitute a fund out of which the equitable demands of appellant and himself under the supplemental agreement should be discharged.

The judgment appealed from is reversed with instructions to the trial court to set aside its findings, conclusions and judgment heretofore entered herein and from the evidence already received, and such further evidence as the court shall receive, to determine what constitutes and shall constitute an equitable division between respondent and appellant, while

they occupy their present statuses under paragraph 9 of the supplemental agreement, of commissions received by respondent from Occidental Life Insurance Company.

Peek, J., and Schottky, J., concurred.