324 P.2d 380

John W. SHURRUM, as Administrator of
the Estate of Dora Watts Shurrum,
Deceased, Plaintiff-Appellant,

v.

Paul H. WATTS and Edna Bowman Watts,
husband and wife, Defendants-
Respondents.

No. 8540.

Supreme Court of Idaho.

April 17, 1958.

46

Harry Povey, Rayborn, Kramer & Walker, Twin Falls, for appellant.

James M. Cunningham, Twin Falls, for respondents.

SMITH, Justice.

Respondent Paul H. Watts will be referred to as respondent.

During the fall of 1932, respondent, a bachelor, then 31 years of age, residing in Idaho, went to the aid of his parents, Paul S. Watts and Dora Watts, in Kansas upon receiving word from them that his father, as respondent testified, "was crippled up with arthritis and wasn't able to farm any more, and the crops were burned up, and they wanted me to come back because they wanted to come to Idaho." Respondent assisted in harvesting what was left of the crops. A sale then had netted the parents approximately $300. Respondent, about March 1, 1933, brought his parents to Buhl, Idaho, in his automobile, transporting their belongings in his trailer.

Respondent, his mother, and his father who continued in ill health, resided together as members of one family from about March 1, 1933, until January 23, 1945, when the father died, and thereafter respondent and his mother so resided until December 1954. Respondent remained a bachelor until his marriage December 14, 1954. The mother remarried January 27, 1955, to John W. Shurrum.

The record shows that for about 20 years respondent transacted in his name all the business of the family, without participation of either parent other than "joint bank accounts," which respondent ultimately closed out. During such time respondent purchased, resided upon, improved and sold several farms; also he built two residence properties and sold one of them, and acquired a storage, freezing and locker plant, all in Twin Falls County. Neither parent assumed any obligations of payment for the properties or any part thereof.

All of the transactions, during such period of time, which included contracts, mortgages, promissory notes and deeds, were conducted in the name of respondent, a bachelor; and all of the conveyances, mortgages and releases were duly recorded in the office of the recorder of Twin Falls County.

Respondent performed all heavy work attendant to the farming operations. He

had the exclusive management and control of all the farming and business operations; neither parent at any time attempted to assert any control or management. Respondent handled all financial affairs and transactions of the business operations and home. No understanding or agreement was ever had that the parents or the mother share the profits and the losses with respondent. Respondent provided for all financial and physical needs of both parents, never refusing any request of either of them. Respondent's father, at times when his ill health would permit, performed light chores and sometimes helped with the chickens. He was physically able to perform only the lightest of tasks.

The mother performed household duties and administered to the needs of the ailing father. She assisted respondent in field work and in the construction of a dwelling on a few occasions. She tended her garden; also the chickens, but with respondent's aid when the flocks were large.

Respondent, only, filed income tax returns, listing thereon as dependents his father, while living, and thereafter his mother. The father's estate was not probated because as the mother stated, "he didn't have any estate."

After the family relationship had continued for some 21 years, respondent, December 14, 1954, married at the then age of 52 years. Although respondent invited his mother to continue residing in his household, she refused to do so and commenced living separate and apart from respondent and his wife. Respondent continued to furnish his mother financial aid and necessities. Additionally, upon her application, she received "government relief" for one month in a sum not definitely established, but either $52 or $82. January 27, 1955, some six weeks after the mother left her son's household, she married Mr. Shurrum.

November 22, 1955, the mother made written demand upon respondent to transfer to her "such money and property to which she is entitled." December 17, 1955, she commenced this action by the filing of her complaint.

Respondent, in his answer, admitted the living together in a family relationship and admitted all the business and property transactions, as alleged in the complaint, but denied the accumulation of any portion of the property by funds owned jointly by himself and his parents.

The trial court, at the conclusion of a trial without a jury, entered findings of fact and conclusions of law and by its judgment denied any relief to the mother, and quieted in respondent as his sole and separate property, title to the business property, being:

Lots 16, 17, 18 and 19, in Block 115 of the Townsite of Buhl, in Twin Falls County, Idaho,

and the residence property, being:

The East 50 feet of Lot 5 in Block 1, of McCollum Addition to Buhl, in Twin Falls County, Idaho,

and certain personalty.

The mother appealed from the judgment; her death having occurred, appellant has been substituted as her personal representative.

Appellant assigns error of the trial court in failing to require an accounting by respondent of funds and properties allegedly resulting from the work of his parents; in finding the nonexistence of any agreement whereby respondent contracted for the personal services of his parents upon an implied promise of payment; in finding that no trust was created for the benefit of the mother, Dora Watts, in the property acquired in respondent's name, and in basing its judgment, denying any relief to her, upon the service-in-family doctrine. Appellant also urges the insufficiency of the evidence to support the trial court's judgment.

Appellant contends that joint bank accounts indicated the mother's interest in funds held by respondent.

March 8, 1937, respondent opened an account in the Filer Branch of Fidelity National Bank of Twin Falls, with his father's name on the account, both signing as joint depositors "with the right of survivorship." This account ran intermittently until re-spondent closed it during March, 1945, after his father's death.

January 22, 1948, respondent opened an account in the same bank with his mother's name on the account, both signing as joint depositors "with the right of survivorship." The next day, January 23, 1948, they signed a joint signature card with the survivorship provision stricken therefrom. This account was closed November 22, 1948.

Neither parent at any time withdrew any funds by check or otherwise from the aforementioned bank accounts. On two occasions the mother signed checks on her son's account, the first time, December 15, 1952, in the sum of $13.50, which she signed "Paul H. Watts by Mrs. Watts," and the second time, December 14, 1954, in the sum of $35 which she signed "Paul H. Watts by Mrs. Dora Watts;" this second check has a lead-pencil notation on it reciting that it was "OKed by Paul, Telephone."

Appellant asserts that the foregoing transactions show respondent's recognition of his mother's interest in the bank funds.

Appellant's counsel developed on cross-examination respondent's purpose in creating the joint accounts, to be his desire that the account in the first instance descend to his father and in the second instance to his mother "in case any thing would happen to me, like I got killed or something;" but that in neither instance did he intend the creation of a so-called joint account.

Such explanatory testimony, standing undisputed as it does, indicated a testamentary intent, should death occur, evinced by respondent, and not an intent to create in praesenti a property interest in either of his parents.

At 48 C.J.S. Joint Tenancy § 3 e, pp. 919–920, the rule is stated:

"Whether or not a bank account is held in joint tenancy with right of survivorship depends on the intention of the parties, determined in the light of all the circumstances. * * * notwithstanding the form of the deposit, a joint tenancy is not created where the account was made joint purely for convenience and without the intent to create any property interests."

See also United States v. Third Nat. Bank & Trust Co., D.C.Pa., 111 F.Supp. 152; Glessner v. Security-Peoples Trust Co., 156 Pa.Super. 56, 39 A.2d 165; Bianchi v. Bedell, 2 N.J.Super. 236, 63 A.2d 273; Malone v. Walsh, 315 Mass. 484, 53 N.E.2d 126; Kittredge v. Manning, 317 Mass. 689, 59 N.E.2d 261; Ball v. Mercantile Trust Co., 220 Mo.App. 1165, 297 S.W. 415; Pence v. Wessels, 320 Mich. 195, 30 N.W.2d 834; Kelberger v. First Federal Savings & Loan Ass'n, 270 Wis. 434, 71 N.W.2d 257; Murray v. Gadsden, 91 U.S.App.D.C. 38, 197 F.2d 194, 33 A.L.R.2d 554; In re Ricisak's Estate, 2 Misc.2d 717, 150 N.Y.S.2d 380; Bassi v. Bassi, 89 Cal.App.2d 886, 202 P.2d 96; Paterson v. Comastri, 39 Cal.2d 66, 244 P.2d 902; Annotation, 33 A.L.R.2d 569.

"The intention of the owner of money in depositing it in a joint account is a question of fact where there is evidence as to the intention." Clausen v. Warner, 118 Ind. App. 340, 78 N.E.2d 551, 552. "The law seems to be well established that the presumption that a bank deposit in the name of a depositor and another, payable to either or the survivor, is the property of both as joint tenants, is rebuttable, during the joint lives of such persons." Long v. Dempsey, Sup., 52 N.Y.S.2d 93, 95; Wallace v. Riley, 23 Cal.App.2d 669, 74 P.2d 800.

Appellant contends that the service-in-family doctrine is not within the purview of the issues tendered by the pleadings since respondent failed to raise it by affirmative defense, or otherwise.

■ The existence of the family relationship is disclosed both by the mother's pleading and proof; she tendered the issue without the necessity of respondent's raising it as an affirmative defense. Respondent availed himself thereof, as he had the right to do, without the necessity of pleading it affirmatively.

In 41 Am.Jur., Pleading, sec. 118, p. 371, the rule is stated, amply supported by authorities:

"In some instances, the defendant's failure to plead a particular defense does not preclude him from asserting

it. He may, for example, avail himself of a defense which he fails to plead but which is brought into the case by his adversary * * *. A defendant may, without pleading a particular defense, have the benefit thereof where it is disclosed in the plaintiff's statement of his cause of action, as where the plaintiff sets out the facts constituting the defense and pleads other facts in avoidance. The defendant is thereby relieved of the necessity of doing more than denying the facts thus alleged."

See also Quinlivan v. Brown Oil Co., 96 Mont. 147, 29 P.2d 374.; Mitchell v. City of Portland, 159 Or. 91, 78 P.2d 582; Werry v. Goodman, 78 Idaho 298, 301 P.2d 1111; 71 C.J.S. Pleading § 101, p. 248.

Appellant asserts that the mother's services were extraordinary and burdensome, for which reason the presumption of gratuitous performance may not prevail; that therefore the trial court erred in failing to find that respondent contracted the personal services of his parents upon his implied promise to pay.

During all the time that the services were allegedly rendered the parties resided together as a family under the same roof, with the expenses of maintaining the home paid from one fund which for some twenty years was kept and maintained in the name of respondent. The relationship was that of parent and child. The trial court found that the various services which appellant rendered were not different from the household duties and farm chores customarily performed by farm women.

◼ A family within the meaning of the family relations doctrine is "a collective body of persons who form one household under one head and one domestic government, and who have reciprocal, natural or moral duties to support and care for one another." Hartley v. Bohrer, 52 Idaho 72, 11 P.2d 616, 618; Wasson v. Wasson, 73 Idaho 359, 253 P.2d 236.

◼ Whenever valuable services are rendered by one to another who knowingly receives the benefit of the services, the law will imply a promise on the part of the recipient to pay the reasonable value of such services. Hartley v. Bohrer, supra; Wasson v. Wasson, supra; Reddy v. Johnston, 77 Idaho 402, 293 P.2d 945; Western Asphalt Co. v. Valle, 25 Wash.2d 428, 171 P. 2d 159; Leoni v. Delany, 83 Cal.App.2d 303, 188 P.2d 765, 189 P.2d 517; McCaffrey v. Cronin, 140 Cal.App.2d 528, 295 P.2d 587; 98 C.J.S. Work and Labor § 6, p. 721; 58 Am.Jur., Work and Labor, sec. 6, p. 514.

◼ No such implication arises, however, where the services are rendered by members of a family to each other, living in one household; in such a case the law will presume that the services are gratuitously rendered, prompted by motives of affection, kindness and the existing rela-

**52**

tionship. Hartley v. Bohrer, supra; Wasson v. Wasson, supra; Victor's Executor v. Monson, Ky., 283 S.W.2d 175; Capps v. Cline, Ark., 297 S.W.2d 654; Trask v. Davis, Mo.App., 297 S.W.2d 792; Johnson v. Johnson, 99 N.H. 392, 111 A.2d 820; In re Yocom's Estate, 2 Ill.App.2d 472, 119 N.E.2d 819; Zearing v. Walters, 125 Ind. App. 202, 122 N.E.2d 625; In re Post's Estate, Sur., 132 N.Y.S.2d 422, affirmed 284 App.Div. 927, 134 N.Y.S.2d 503; In re Marotz' Estate, 260 Wis. 155, 50 N.W.2d 472; In re Tilghman's Estate, 240 Minn. 494, 61 N.W.2d 743; Belletich v. Pollock, 75 Cal.App.2d 142, 171 P.2d 57; Eklund v. Eklund, 76 Cal.App.2d 389, 173 P.2d 50; 98 C.J.S. Work and Labor § 16, p. 740; 58 Am.Jur., Work and Labor, sec. 11, p. 519; Annotations, 7 A.L.R.2d 15.

"The degree of relationship may strengthen or diminish the implication that the services are acts of gratuitous kindness or affection according to its proximity or remoteness. The *presumption* of gratuitous nature *applies to relatives by blood.* (Citations) * * * The family relationship is the important factor in raising the presumption." (Emphasis supplied.) Hartley v. Bohrer, supra [52 Idaho 72, 11 P.2d 616, 617]; In re Talty's Estate, 232 Iowa 280, 5 N.W.2d 584, 144 A.L.R. 859; In re Baker's Estate, 144 Neb. 797, 14 N.W.2d 585, 155 A.L.R. 950; LeRoux v. Edwards, 32 Wash.2d 35, 200 P.2d 502; 34 C.J.S. Executors and Administrators § 371, p. 107.

■ The presumption that services rendered by a member of the family are gratuitous casts the burden of proof upon the claimant of overcoming such presumption. Hartley v. Bohrer, supra; Wasson v. Wasson, supra; Trask v. Davis, supra; Henry v. Hemstreet, 86 Ga.App. 863, 72 S.E. 2d 801; Tess v. Radley, 412 Ill. 405, 107 N.E.2d 677; Farmer v. Underwood, 164 Iowa 587, 146 N.W. 18; In re McLain's Estate, 126 Or. 456, 270 P. 534. Where a preponderance of the evidence shows that the services were not gratuitous the presumption is overcome. Hartley v. Bohrer, supra.

■ The mother failed to overcome the presumption that her services, performed in the family relationship, were gratuitous. The finding of the trial court that her services so performed were those usually performed by farm women and not extraordinary or burdensome, is fully sustained by substantial and competent evidence.

We shall next dispose of appellant's contention that the trial court erred in failing to impress a trust for the benefit of appellant in the properties which respondent acquired in his name.

■ The mother in her complaint alleges the details of the various purchases of properties by respondent by use of funds allegedly owned jointly by him and his parents. The complaint alleges a resulting trust, i. e., that respondent used trust

funds in purchasing the properties, taking title in his own name. While appellant asserts the creation of a constructive trust, nevertheless the evidence fails to show that respondent obtained any of the properties by violation of confidence or fiduciary relationship, or other unconscionable or fraudulent manner.

▋ Where title to property is taken in the name of one party but the consideration is paid by another, a resulting trust arises in favor of the party who pays the consideration. National Bank of Idaho v. D. W. Standrod & Co., 47 Idaho 93, 272 P. 700; Rexburg Lumber Co. v. Purrington, 62 Idaho 461, 113 P.2d 511; Edwards v. Tenney, 65 Idaho 784, 154 P.2d 143; Jaussaud v. Samuels, 58 Idaho 191, 71 P.2d 426.

▋ Generally an alleged beneficiary of a resulting trust is required to show by clear, cogent, and convincing evidence the underlying facts necessary to give rise to resulting trust. Rice v. Rigley, 7 Idaho 115, 61 P. 290; National Bank of Idaho v. D. W. Standrod & Co., supra; Aker v. Aker, 52 Idaho 713, 20 P.2d 796, appeal dismissed and certiorari denied 290 U.S. 587, 54 S.Ct. 80, 78 L.Ed. 518; Dunn v. Dunn, 59 Idaho 473, 83 P.2d 471; Spina v. Spina, 372 Ill. 50, 22 N.E.2d 687; West v. Scott, 6 Ill.2d 167, 128 N.E.2d 734; Wilson v. St. Clair, Ky., 286 S.W.2d 554; Shipe v. Hillman, 206 Or. 556, 292 P.2d

123; Kitt v. Kitt, 4 Utah 2d 384, 294 P.2d 791; 54 Am.Jur., Trusts, sec. 622, p. 482; 89 C.J.S. Trusts § 137, p. 1008.

▋ As a general rule, a resulting trust arises only where such may reasonably be presumed to be the intention of the parties as determined from the facts and circumstances existing at the time of the transaction. Smith v. Smith, 143 Fla. 159, 196 So. 409; Sands v. Church of the Ascension, etc., 181 Md. 536, 30 A.2d 771; Baskett v. Crook, 86 Cal.App.2d 355, 195 P.2d 39; 89 C.J.S. Trusts § 102 b, p. 947. In Creasman v. Boyle, 31 Wash.2d 345, 196 P.2d 835, 840, the rule is stated:

"* * * the whole doctrine of resulting trusts is founded upon the principle of a presumed intention to create a trust, and where the facts and circumstances are such as reasonably indicate an absence of such intention or indicate a contrary intention the principle should not be applied."

▋ The presumption is that the holder of the title to property is the owner thereof. Baskett v. Crook, supra; McQuin v. Rice, 88 Cal.App.2d 914, 199 P.2d 742; Mountford v. Mountford, 181 Md. 212, 29 A.2d 258.

▋ Where two persons allegedly contribute money to the purchase of land, the title to which is taken in the name of one of them, a resulting trust comes, not

from any agreement, but from the facts shown as to the amount of purchase price paid by each. McQuin v. Rice, supra; Elliott v. Wood, 95 Cal.App.2d 314, 212 P.2d 906. The beneficiary claiming the protection of the resulting trust must have paid, or incurred an absolute obligation to pay, the consideration for the conveyance. National Bank of Idaho v. D. W. Standrod & Co., supra. A resulting trust will not be decreed where it is not possible reasonably to establish the proportion of the purchase price contributed by the one claiming a resulting trust. Rexburg Lumber Co. v. Purrington, supra; Socol v. King, 36 Cal.2d 342, 223 P.2d 627; Landon v. Brown, Tex.Civ.App., 266 S.W.2d 404; Curielli v. Curielli, 388 Ill. 215, 57 N.E.2d 879; Kehely v. Kehely, 200 Ga. 41, 36 S.E.2d 155; Mountford v. Mountford, supra; 89 C.J.S. Trusts § 122, p. 977; 54 Am.Jur., Trusts, sec. 216, p. 167, also sec. 622, p. 482.

◼ We have reviewed the evidence with the foregoing principles in mind. The evidence fails to disclose facts and circumstances as of the times of the respective property transactions, indicative of any intention on the part of either the mother or respondent that the properties or any part thereof be owned in part by the mother. On the contrary, competent and substantial evidence negatives any such intention.

Further, it is impossible to determine from the evidence the extent of the claimed interest of the mother in the properties. She did not claim to own the properties in entirety but claimed a lesser interest, neither defined or stated in her pleadings, nor proven. The evidence is insufficient to sustain an award in her favor, or in favor of appellant, of a specific or definite interest in the properties. The findings and judgment of the trial court are sustained by competent and substantial evidence.

◼ The findings and judgment of the trial court will not be disturbed on appeal where supported by competent, substantial evidence. I.C. § 13–219; Condie v. Swainston, 62 Idaho 472, 112 P.2d 787; Langley v. Deshazer, 78 Idaho 376, 304 P.2d 1104.

The judgment of the trial court is affirmed. Costs to respondents.

KEETON, C. J., and McQUADE, J., concur.

PORTER, Justice, with whom TAYLOR, Justice, concurs (dissenting).

I feel compelled to dissent from the conclusion reached in the majority opinion. I feel that the family relation doctrine is not applicable herein. Appellant, by her pleading and proof, does not attempt to recover remuneration for services rendered to another member of the household.

She is not asking for wages for labor performed. Her pleading and proof are that she and her son contributed to a common fund and that by their continued efforts and by the use of the common fund the same was augmented until it became of substantial amount. And that such common fund and the property acquired with same were, for convenience, carried in the name of the son. Appellant asked for an accounting of the property acquired with such common fund and that her son be declared to hold the same in trust for herself and her son and asked for her proportionate share of such property. If there had been no accumulations in such common fund, appellant does not attempt to plead or prove that she would be entitled to receive anything from the son.

The gist of the decision by the trial court is found in Paragraphs XXII and XXIII of the Findings of Fact which read as follows:

"XXII.

"That at no time has there existed any partnership agreement between Paul H. Watts, Dora Watts Shurrum and/or Paul S. Watts, either expressed or implied; that at no time has there existed any joint venture agreement between Paul H. Watts, Dora Watts Shurrum and/or Paul S. Watts, either expressed or implied; that, at no time has there existed any agreement of employment wherein Paul H. Watts contracted for the personal services of Dora Watts Shurrum and/or Paul S. Watts, either expressed or implied.

"XXIII.

"That there were no act or acts performed on the part of Dora Watts Shurrum, Paul S. Watts or Paul H. Watts between February 1933, to the present time which could or would create any express trust or implied trust for the benefit of Dora Watts Shurrum or Paul S. Watts upon any of the property, real or personal, acquired in the name of Paul H. Watts between February, 1933, and the present time."

There is no claim on the part of the appellant that any partnership agreement or any joint venture agreement or any agreement of employment existed between the parties, as mentioned in Paragraph XXII. I am of the opinion that the finding in Paragraph XXIII that there was not any trust arising from the acts of the parties in favor of appellant, is a conclusion of law not supported by and contrary to the evidence.

The underlying facts in this cause are simple and are not seriously controverted. The father, mother and son united their efforts in 1933 for the purpose of making a livelihood. The parents had $300 and the son had an old Chevrolet automobile.

This arrangement was continued until the death of the father, and thereafter was continued by the mother and son. In the course of their efforts a surplus common fund was created. By their continued efforts and the use of their surplus fund over the years, a substantial amount of real and personal property was acquired, including a home and a cold storage plant in Buhl, Idaho.

For convenience all funds and property were carried generally in the name of the son although at times the bank account was carried as a joint bank account between the father and son and thereafter between the mother and son. These joint bank accounts are evidence tending to support the conclusion that appellant was not a mere housekeeper but was recognized by respondent as having an interest in the common funds.

The mother contributed to this common fund more than the mere matter of keeping house for her son. She raised and peddled garden vegetables and fruit. She milked cows and sold dairy products. She raised, dressed and peddled approximately 400 chickens per year. She sold eggs from house to house. She labored in the fields on the farms. She worked in the cold storage plant not as an employee but as an owner. All her earnings and income were turned over to the son and were placed in the common fund.

When the mother was 76 years of age and the son 52 years of age, he got married on December 17, 1954. This marriage brought about the dissolution of the common home of the mother and son and the mother moved or was removed into housekeeping rooms. The fact that the mother later married has no bearing on the merits of this action.

The fact that appellant was unable to show precisely what amount she had contributed to the common fund is not decisive against her in this cause. The trial court should have determined as nearly as possible under the evidence the percentage which the mother and son each contributed to the fund and should have ordered the properties divided accordingly.

I am of the opinion that the trial court erred under the evidence in deciding that the son did not hold a portion of the common fund in trust for his mother. The cause should be remanded to the trial court for further proceeding in accordance with these views.